# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## P. A. McDaniel v. City of Clifton Forge.

### November 15, 1923.

1. MUNICIPAL CORPORATIONS—*Municipal Securities—Limitation on Indebtedness—Bonds for Electric Light Plant—Case at Bar.*—The construction, erection, and operation of an electric light system is a specific undertaking from which a city may derive a revenue, and bonds issued for such a purpose are, under subsection (b) of section 127 of the Constitution of 1902, excluded from the computation of the indebtedness to which a city is limited by section 127 of the Constitution of 1902.

2. MUNICIPAL CORPORATIONS—*Municipal Securities—Limitation on Indebtedness—Bonds for Operation and Construction.*—A city is not restricted by the Constitution (section 127 of the Constitution of 1902), nor by the statute (Code of 1919, section 3081), in any way in the expenditure of money derived from the sale of bonds issued under section 127, subsection (b) of the Constitution of 1902, provided it is used for a specific undertaking from which the city may derive a revenue. It is immaterial that a portion of the bond issue money is expended for operating expenses.

3. MUNICIPAL CORPORATIONS—*Municipal Securities—Limitation on Indebtedness—Bonds for Operation and Construction.*—The act approved March 16, 1918 (Acts 1918, ch. 358), authorizes and empowers the council of any city or town in this State which is authorized to acquire, maintain, or establish a system of water works, or other specific undertaking from which the city or town may derive a revenue, in accordance with section 127 (b) of the Constitution of Virginia, to issue so many bonds as may be necessary to acquire, maintain, or establish such system of water works or other specific undertaking.

   *Held:* That there is no substantial difference between maintaining and maintaining and operating a municipal electric light plant, and therefore bonds issued by a city for the purpose of constructing and operating an electric light plant are not to be included within the indebtedness of a city for the purpose of computing the city's indebtedness within section 127 of the Constitution of 1902.

4. WORDS AND PHRASES—*"Maintain."*—"Maintain" is defined as "not to suffer to cease, or fail; to bear the expense of; to keep up; to supply with what is needed."

5. MUNICIPAL SECURITIES—*Issuance of Bonds—Sale of Bonds.*—The author-
ity to issue bonds and borrow money under section 3081 of the Code
of 1919 and the act of March 16, 1918, implies the authority to sell
the bonds and expend the money in the specific undertaking for
which it was borrowed. Besides, the Code, section 3088, in terms
authorizes the municipal authorities to prepare, issue, and sell or
negotiate bonds of the municipality to the amount so authorized.

6. MUNICIPAL SECURITIES—*Limitation on Indebtedness—Section 127, Sub-
section (b) of the Constitution of 1902—Section 3080 of the Code of
1919.*—Section 127 (b) of the Constitution of 1902 and section 3080
of the Code of 1919, recognizing the fact that such an enterprise may
not pay operating expenses for five years, provide that during that
period, or so much thereof as the council may determine, the bonds
shall not be included in ascertaining the limitation of the power
of the city to incur indebtedness. The plain meaning of the
language of the Constitution and the statute is that the city may
expend the money in any manner it may think best for the promotion
of the special undertaking.

Appeal from a decree of the Circuit Court of the city
of Clifton Forge. Decree for defendant. Complainant
appeals.

*Affirmed.*

The opinion states the case.

*J. M. Perry*, for the appellant.

*O. B. Harvey*, for the appellee.

WEST, J., delivered the opinion of the court.

P. A. McDaniel, a citizen and taxpayer of the city,
suing for himself and all others similarly situated, who
might come into the suit on the usual terms, filed a bill
in chancery against the city of Clifton Forge, praying
that a certain ordinance of the city, authorizing a pro-
posed issue of bonds, and any bonds issued, or to be
issued thereunder, might be declared invalid and void,
and that the city might be forever enjoined and re-

strained from making, issuing, negotiating or selling any of the bonds to any person whomsoever.

His application for a temporary injunction was refused. On November 3, 1922, the cause was heard on its merits and the decree now under review was entered dismissing the complainant's bill.

The facts are not disputed and appear in the appellant's petition substantially as stated herein.

On December 19, 1921, the council of the city of Clifton Forge adopted an ordinance reciting that in the opinion of the council it was to the interest of the city to construct, erect, purchase, own, maintain and operate a municipal electric light works, or plant and system, for the purpose of generating and furnishing at all times to its inhabitants a sufficient and adequate supply of electrical current for domestic and power purposes; and further reciting, that "in order to effect said purposes it is proposed by the city to borrow money and issue bonds as contemplated by the provisions of clause 'b', section 127 of the Constitution of the State of Virginia, and said money and bonds not to be included in the otherwise indebtedness of said city."

The ordinance then ordained that the council cause to be issued $240,000.00 of the coupon bonds of the city, in the denomination of $1,000.00 each.

The ninth clause of the ordinance provided: "That the purpose for which said bonds are issued is to provide funds for the following purposes, to-wit:

(1) "To acquire a site, construct, maintain, equip and operate a municipal electric light plant, works and system with all necessary buildings, structures, machinery, equipment, transmission lines, right and appurtenances necessary for the operation of a complete electric lighting and power system within the city of Clifton Forge, $230,000.00.

(2) "To provide a fund to finance and cover neces-sary operating purchases, expenses and costs incident to the operation of said plant and system, * * $10,000.00."

A special election was held, at which the issuance of the bonds was approved, in the manner prescribed by law.

The outstanding indebtedness of the city of Clifton Forge at the time the bill was filed was:

"Bonds not excluded under section (b) of
   the Constitution_____$430,500.00
"Deduction general sinking fund_____   23,307.40

"Net amount of bonded indebtedness which
   is to be considered in ascertaining the
   power of the city of Clifton Forge to in-
   cur interest bearing indebtedness, not ex-
   cluded under section 127 (b) of the Con-
   stitution_____$407,192.60

"Bonds issued for a water supply under sec-
   tion 127 (b) of the Constitution_____ 190,000.00
"Less specific sinking fund _____  40,055.71

"Net amount of outstanding water bonds__$149,944.29"

The assessed value of the real estate in the city of Clifton Forge subject to taxation as shown by the last preceding assessment for taxation was $3,171,548.00.

Eighteen per cent of the assessed value of the real estate in the city equals $570,878.64.

The plaintiff contends that the proposed bonds are not within the provisions of section 127 (b) of the Constitution, and that therefore the city is without power to issue them. The city insists that the proposed issue is clearly within section 127 (b) of the Constitution, and that the bonds may be issued by it.

The sole question for decision is, are the proposed bonds within the excluded class described in section 127 (b) of the Constitution?

Section 127 of the Constitution prohibits any city or town from issuing any bonds or interest bearing obligations for any purpose, or in any manner, to an amount which, including existing indebtedness, shall at any time exceed eighteen *per centum* of the assessed valuation of the real estate in the city or town subject to taxation, as shown by the last preceding assessment for taxes; and provides further that in determining the limitation of the power of a city or town to incur indebtedness there shall not be included the classes of indebtedness mentioned in subsection (a) and subsection (b) of section 127.

Subsection (b) provides that bonds, authorized by an ordinance enacted in accordance with section 123 and approved by the affirmative vote of a majority of the qualified voters of the city or town voting upon the question of their issuance, for a supply of water or *other specific undertaking from which the city or town may derive a revenue*, shall be in the excluded class, with the proviso that from and after a period to be determined by the council, not exceeding five years from the date of such election, whenever and for so long as such undertaking fails to produce sufficient revenue to pay for cost of operation and administration (including interest on bonds issued therefor and the cost of insurance against loss by injury to persons or property), and an annual amount to be converted into a sinking fund sufficient to pay, at or before maturity, all bonds issued on account of such undertaking, all such bonds outstanding shall be included in determining the limitation of the power to incur indebtedness, unless the principal and interest thereof be made payable exclusively from the receipts of the undertaking.

Section 127 (b) of the Constitution and section 3081 of the Code authorize the issuance of bonds, "for a supply of water or *other specific undertaking from which the city or town may derive a revenue.*"

[1, 2] It cannot be said that the construction, erection and operation of an electric light system is not a specific undertaking from which a city may derive a revenue. The city is not restricted by the Constitution nor by the statute, Code, section 3081, in any way in the expenditure of money derived from the sale of bonds issued under section 127 (b), provided it is used for a specific undertaking from which the city may derive a revenue. It is immaterial that a portion of the bond issue money is expended for operating expenses.

The very object of the issue is to realize funds with which to construct and *operate* the plant until a revenue can be derived therefrom at which time the fund will be reimbursed for the amount expended in operating expenses. It is quite possible that an "undertaking" in which all the money realized from the sale of the bonds was invested in the construction of the plant might be a colossal failure, while one in which a portion of the fund was invested, on the start, in operating expenses, would produce handsome net profits.

[3, 4] Besides the act approved March 16, 1918 (Acts 1918, c. 358), authorizes and empowers the council of any city or town in this State which is authorized to acquire, maintain or establish a system of water works, or other specific undertaking from which the city or town may derive a revenue, in accordance with section 127 (b) of the Constitution of Virginia, to issue so many bonds as may be necessary to acquire, maintain or establish such system of water works or other specific undertaking.

Webster defines *maintain*, "not to suffer to cease, or

fail; to bear the expense of; to keep up; to supply with what is needed."

Under this definition there is no substantial difference between maintaining, and maintaining and operating a municipal electric light plant.

[5] The authority to issue bonds and borrow money under section 3081 of the Code and the act of March 16, 1918, implies the authority to sell the bonds and expend the money in the specific undertaking for which it was borrowed. Besides, the Code, section 3088, in terms authorizes the municipal authorities to prepare, issue and sell or negotiate bonds of the municipality to the amount so authorized.

[6] Section 127 (b) of the Constitution and section 3080 of the Code, recognizing the fact that such an enterprise may not pay operating expenses for five years, provide that during that period, or so much thereof as the council may determine, the bonds shall not be included in ascertaining the limitation of the power of the city to incur the indebtedness. The purpose of the constitutional convention in adopting section 127 (b) plainly appears from the following language used by Mr. Brooke, chairman of the committee on the organization and government of cities and towns:

"It is not fair in estimating the bonded indebtedness of a city, and whether it has arrived at the permitted percentage or not, to include the bonds which have been issued for the erection of these plants, and for the operation of them, from which the city expects to get a revenue, and does get a revenue, sufficient to pay the interest and in time to pay the bonds, because it does not add to the obligations of a city." Debates Constitutional Convention, Vol. II, p. 1898.

The plain meaning of the language of the Constitution and the statute is that the city may expend the

money in any manner it may think best for the promotion of the special undertaking. If the undertaking proves a success and produces sufficient revenue to comply with section 127 (b) of the Constitution and section 3080 of the Code, the bonds are not to be taken into consideration in determining the amount of money for which the city may issue bonds. But if it fails to yield that amount of revenue, the bonds automatically become a part of the ordinary indebtedness of the city. Such bonds may at one period of time be excluded from and at another included in the general indebtedness of the city, depending upon the revenue derived from the undertaking.

Our conclusion is that the bonds in question are clearly within the excluded class described in section 127 (b) of the Constitution and have been lawfully authorized to be issued by the city of Clifton Forge, and that the decree complained of is plainly right and should be affirmed.

*Affirmed.*