# Richmond

HARRY WOODING, MAYOR OF THE CITY OF DANVILLE V.
HENRY C. LEIGH, JUDGE OF THE CORPORATION
COURT OF THE CITY OF DANVILLE.

November 22, 1934.

Present, All the Justices.

The opinion states the case.

*A. M. Aiken,* for the petitioner.

*John W. Carter, Jr., Grasty Crews* and *Frank Talbott, Jr.,* for the respondent.

EPES, J., delivered the opinion of the court.

This is a proceeding upon a petition invoking the original jurisdiction of this court to issue a mandamus. The petition is filed by Harry Wooding, as mayor of the city of Danville, against Honorable Henry C. Leigh in his official capacity as judge of the corporation court of that city. It prays that a mandamus be issued commanding the defendant to enter an order calling an election at which there shall be submitted to the qualified voters of the city of Danville the question, Shall bonds to the amount of $2,225,000 be issued by that city for the purpose of constructing a municipal hydro-electric plant at the Pinnacles of the Dan river, in Patrick county, Virginia, and a transmission line and other facilities incident thereto?

The pertinent facts, as shown by the stipulation of the parties, are as follows:

Danville has for some years owned and operated a municipal electric light and power plant at which electric current is generated by steam power.

After the National Industrial Recovery Act was enacted on June 16, 1933 (48 Stat. 195), the city, acting through its council, made application to Honorable Harold L. Ickes, Federal Emergency Administrator of Public Works, for a loan from and a grant of funds by the United States for the purpose of constructing a hydro-electric plant at the Pinnacles of the Dan river, a transmission line from there to Danville, and other facilities incident to such a plant.

On or about December 20, 1933, the Federal Emergency Administrator of Public Works submitted to the city council a proposed draft of an agreement, to be dated as of

January 12, 1934, between the city and the United States. By this agreement the United States agreed to purchase bonds of the city of Danville to an amount not to exceed $2,344,500, the proceeds thereof "to be used for the construction by the borrower (the city) of a hydro-electric light and power plant and transmission line * * * on a site known as the 'Pinnacles Mountain Tract' in Patrick county." It further agreed to "grant to the borrower an amount not to exceed thirty per centum of the cost of labor and materials employed on the project," but stipulated that the total of the loan and grant should not exceed the cost of the project, and should in no event exceed $3,000,000. This agreement contained a number of conditions precedent to the making of the loan and grant by the United States. It is a long document, containing many terms and provisions, which need not be set out here.

In accordance with a resolution of the city council, the mayor of the city executed this agreement in the name of the city. Harold L. Ickes, Federal Emergency Administrator of Public Works, executed it in the name of the United States of America. It was executed by these officers at some time between December 20, 1933, and January 24, 1934, and on the latter date a copy thereof was printed at length by order of the city council in one of the daily papers published in the city.

On January 27, 1934, an ordinance was adopted by the city council and approved by the mayor which, omitting only the schedule of the installment payments mentioned in section 2, reads as follows:

"Be it ordained by the council of the city of Danville as follows:

"Section 1. In order to enable the city of Danville to carry on more economically and adequately the undertaking of generating and supplying electric current to the city and its inhabitants, it is expedient for the city to borrow two million three hundred and forty-four thousand five hundred dollars ($2,344,500) and to issue $2,344,500 principal amount of electric revenue bonds of the city for the

money so borrowed, such bonds to be payable exclusively from the receipts of the undertaking for which they are issued, without recourse against the general credit or taking power of the city. Accordingly, such borrowing and bond issue are hereby authorized. The proceeds of the sale of said bonds shall be used for the purpose of enlarging the present electric plant and system of the city of Danville.

"Section 2. The said bonds shall be dated April 1, 1934. They shall bear interest at the rate of four per centum (4%) per annum, payable semi-annually. The principal of said bonds shall be payable in annual installments on the first day of April in each year, as follows: (Here follows a schedule of installments payable each year during the period 1935-1963).

"Section 3. The said bonds shall be issued under and in compliance with clause (b) of section 127 of the Constitution of Virginia, and shall not be included in determining the limitation of the power of the city of Danville to incur indebtedness. The principal and interest of said bonds shall be payable exclusively from the receipts of the undertaking for which they are issued.

"Section 4. No bonds shall be issued under the authority of this ordinance until said bonds shall have been approved by the affirmative vote of a majority of the qualified voters of the city of Danville voting upon the question of their issuance. The city clerk is hereby directed to present forthwith a certified copy of this ordinance to the Corporation Court of the city of Danville, or to the judge thereof in vacation, and said court or judge is hereby authorized to enter an order directing the proper election officials of the city of Danville to take such steps and prepare such means as may be necessary to submit to the qualified voters of the city the question of whether said bonds shall be issued, and to make such order as may be proper to give due publicity to such election.

"Section 5. This ordinance shall take effect in the manner provided by law."

A copy of this ordinance was duly presented to the judge

of the corporation court of the city, who on January 29, 1934, entered an order calling an election to be held on February 26, 1934, in accordance with the provisions of this ordinance.

A majority of the qualified voters who voted at this election voted against the issuance of bonds, the vote being 1,498 for the bond issue and 1,684 against it; and on April 20, 1934, the judge of the corporation court entered an order so finding and certifying.

Neither the ordinance, the order of the judge calling this election, nor the notice of the election made any reference to the fact that the construction for which it was proposed to issue bonds was the construction of a hydro-electric plant at the Pinnacles of the Dan. But the council in its advocacy of the proposed bond issue publicly, through the newspapers and in other ways, told the voters of the city that this was the purpose for which the bond issue was proposed, and that it was proposed to sell the bonds to and procure a grant of aid for this purpose from the United States in accordance with the agreement heretofore mentioned.

Some of the citizens of Danville were not satisfied with the decision of the majority of the voters at this election, and continued to agitate for the construction by the city of a hydro-electric plant at the Pinnacles of the Dan.

On October 10, 1934, the city council passed and the mayor approved an ordinance, the material parts of which read as follows, the italics being ours:

"Be it ordained by the council of the city of Danville as follows:

"Whereas, the committee of citizens appointed to make a study of Danville's power problem has, upon the advice of Charles T. Main, Incorporated, consulting engineers, recommended the proposed hydro-electric development at the Pinnacles of the Dan as the most economical source of power available to Danville.

"Section 1. In order to enable the city of Danville to carry on more economically and adequately the undertaking of generating and supplying electric light and power to the

city and its inhabitants, it is deemed expedient for the city to borrow two million two hundred and twenty-five thousand dollars ($2,225,000) and to issue its bonds in the same principal amount for the money so borrowed. Accordingly, such borrowing and bond issue are hereby authorized.

"Section 2. The proceeds from the sale of said bonds (exclusive of any accrued interest and premiums, which accrued interest and premiums may be used for the service of said bonds), together with any and all sums which the United States of America, acting through the Federal Emergency Administrator of Public Works or such other similar agency or agencies as may be designated or created, may grant to the city of Danville for the purpose, shall be used for the construction of a hydro-electric light and power plant and transmission lines and the structures and facilities, including dams, incidental thereto and for the acquisition of lands, easements or rights in lands, all as part of the city's electric light and power generating and distribution system.

"Section 3. Said bonds shall bear interest at the rate of four per centum (4%) per annum, payable semi-annually, and shall mature within a period of thirty (30) years from their date at such time or at such times and in such amounts as the city council by ordinance or resolution shall determine.

"Section 4.      *      *      *      *      *      *      *

"Section 5. It is the purpose of this ordinance to authorize the borrowing of money and issuing of bonds under the provisions of clause (b) of section 127 of the Constitution of Virginia for a specific undertaking from which the city may derive a revenue, and said bonds herein authorized shall be issued under and in compliance with said clause and shall not be included within the otherwise authorized indebtedness of the city of Danville. Said bonds shall be payable as to both principal and interest from the gross revenues, receipts and income derived from the city's generating and distribution system of electric light and

power and from the amounts to be paid by the city for all electric light and power taken from the system by the city for its own uses and purposes, and for such power so taken the city shall pay reasonable rates. The city shall covenant and agree to take from the system all power and light needed for its own uses and purposes and to pay reasonable rates for the power and light so taken.

"Section 6. Said bonds *may* be issued and sold at public sale, or at private sale to the United States of America, acting through the Federal Emergency Administrator of Public Works or other similar agency or agencies pursuant to the provisions of chapter 26 of the laws of 1933 of Virginia. They *may* be issued under resolution or ordinance providing for their payment and security and for the remedies of the holders of the bonds in accordance with the terms of any agreement or agreements with the United States of America, acting through the said Administrator of Public Works, into which the city council *may* determine to enter; and such agreement or agreements *may* contain such terms, conditions or provisions, not inconsistent with the provisions of this ordinance or of clause (b) of section 127 of the Constitution of Virginia, as in the discretion of the city council may be necessary, proper or advisable for the purpose of obtaining a grant or loan or both from the said administrator. The bonds *may*, if so provided by ordinance or resolution of the city council, be secured by a deed of trust or a mortgage on the new hydro-electric plant and transmission line and on all or any part of the revenues of its electric light and power generating and distribution system.

"Section 7. The new hydro-electric light and power plant and transmission lines shall be constructed for the use of the city and its inhabitants; and *should* it issue any of said bonds to the Federal Emergency Administrator, the city shall agree that it will maintain and operate such plant and transmission lines with the necessary distribution lines within the city as a municipally owned and operated public utility and that the city will take, use and distribute the

current generated thereby and that it will charge reasonable and adequate rates for such current.

"Section 8. The city may use and apply to any other city purpose all surplus revenues from its electric light and power system over and above those required by any agreement between the city and the Federal Emergency Administrator of Public Works to be set aside and applied solely to the maintenance, operation, repair and insurance of the system and to the payment of the principal of and interest on said bonds and to the accumulation of reserve funds for said purpose.

"Section 9. The city shall not, so long as any bonds authorized pursuant to this ordinance are outstanding, grant any competitive electric light or power franchise or purchase or take current from any source other than from its own system, unless and to the extent that at any time the light or power supply by such system is not available or is inadequate. *If* any of said bonds are sold to and so long as any may be held by the Federal Emergency Administrator of Public Works, or other similar agency or agencies of the United States, the city shall furnish to the original purchaser or purchasers, not later than thirty days after the close of each six months' fiscal period, complete operating and income statements of the system in reasonable detail covering such six months' period; and, not more than sixty days after the close of each fiscal year, complete financial statements of the system and of the city covering such fiscal year, certified by independent auditors.

"Section 10. No bonds shall be issued under the authority of this ordinance until the issuance thereof shall have been approved by the affirmative vote of a majority of the qualified voters of the city of Danville, voting upon the question of their issuance.

"Section 11. The city clerk is hereby directed to present forthwith a certified copy of this ordinance to the Corporation Court of the city of Danville, or to the judge thereof in vacation, and said court or judge is hereby authorized and requested to enter an order directing the proper election

officials of the city of Danville to take such steps and pre-pare such means as may be necessary to submit to the qualified voters of the city the question whether said bonds shall be issued, and to make such order as may be proper to give due publicity to such election.

"Section 12. The ballot for the use of the voters in such election shall be in substantially the following form:

"BALLOT

"SPECIAL ELECTION 6TH NOV., 1934.

"Shall the city of Danville issue its electric revenue bonds in the amount of $2,225,000, to bear interest at the rate of four per centum per annum, pursuant to an ordi-nance adopted by the city council on the 10th day of Octo-ber, 1934; apply the proceeds of such bonds, together with the proceeds of such grant as is made for the purpose by the Federal Emergency Administrator of Public Works pur-suant to the National Industrial Recovery Act, to the con-struction of a hydro-electric power plant at the Pinnacles of the Dan, with necessary transmission line, as part of the city's electric light and power generating and distribution system; * * * secure said bonds, in the discretion of the city council, by such undertakings with respect to the new hydro-electric plant and transmission line and with respect to all or any part of the revenues of the city's electric light and power generating and distribution system as the city council may determine (which undertakings shall provide that all surplus revenues over and above bond interest and principal requirements and reserving therefor and opera-tion, maintenance, repair and insurance charges may be applied by the city for any other of its purposes) : take from said system power and light for all its own uses and purposes and pay reasonable rates therefor as long as any of said bonds are outstanding; and, from the revenues to be derived from said system, pay off said bonds in not to exceed thirty years; all pursuant to said ordinance?

"FOR BOND ISSUE

"AGAINST BOND ISSUE."

■ When this ordinance was presented to the Honorable Henry C. Leigh, judge of the Corporation Court of the city of Danville, he refused to enter an order calling an election to submit the question, whether the bonds proposed in the ordinance of October 10, 1934, should be issued. As stated by him in a memorandum opinion prepared at the time, his reason for refusing to enter the order was that the bond issue proposed by the ordinance of October 10, 1934, was for a purpose "similar" to that of the bond issue proposed by the ordinance of January 27, 1934, which was defeated at the election held on February 26, 1934, and that section 3088, Code Va. 1919, provides that where a proposed bond issue is defeated at an election duly called and held, "no other election for a similar purpose shall be held within one year after such election."[1]

The petitioner contends that for two reasons the judge was wrong in his conclusion that section 3088 prohibits the calling of an election in accordance with the ordinance of October 10, 1934, to be held prior to February 26, 1935.

(1) He contends that the purposes of the bond issues proposed by the ordinances of January 27th and October 10th are not "similar" purposes within the meaning of section 3088. We agree with Judge Leigh that they are "similar" purposes within the meaning of that section.

(2) He contends that it is sought to issue the bonds proposed by the ordinance of October 10th, under the pro-

[1] "Section 3088. Order to be entered by judge.—If it shall appear from said returns that a majority of the qualified voters voting at such election shall be against such proposed bond issue, an order shall be entered of record accordingly, and no other election for a similar purpose shall be held within one year after such election. But if a majority of the qualified voters at such election shall be in favor of such bond issue, the court or judge thereof shall enter an order accordingly, a copy of which shall be forthwith certified by the clerk of such court to the council, or to the board of control, and the municipal authorities shall be thereupon fully authorized and empowered to prepare and issue and to sell or to negotiate bonds of such municipality to the amount so authorized."

visions of chapter 26, Acts 1933 (Ex. Sess.), page 47, and that section 3088 has no application to bonds issued in pursuance of that act.

The title and the pertinent parts of chapter 26, Acts 1933 (Ex. Sess.) read as follows (italics ours):

"Chap. 26.—An Act to enable counties, cities and towns to secure the benefits of an act of the Congress of the United States of America, approved June 16, 1933, known as the National Industrial Recovery Act, and any acts amendatory thereof and any acts supplemental thereto and revisions thereof, and any further act of the Congress of the United States of America delegating powers to undertake any purpose or purposes in aid of the financing of which the President of the United States or any other Federal agency is now or hereafter authorized and empowered, through the Federal Emergency Administrator of Public Works or through such other agencies as may be designated or created, to make grants or loans; delegating powers to contract debts, borrow money and issue bonds therefor; prescribing the mode of procedure. for, and regulating the issuance of such bonds, and providing for the payment thereof; authorizing agreements with the holders of such bonds and providing for the remedies of such holders; and repealing inconsistent provisions of all laws general or special of the Commonwealth.

"Approved September 7, 1933.

"Be it enacted by the General Assembly of Virginia, as follows:

"1. The following terms wherever used or referred to in this act shall have the following meaning unless a different meaning clearly appears from the context:

"(a) The term 'project' shall mean the undertaking by counties, cities or towns of any purpose or purposes not specifically prohibited by the Constitution of the Commonwealth, in aid of the financing of which the President of the United States or any other Federal agency is now or hereafter authorized and empowered, through the Federal Emergency Administrator of Public Works, or through such

other agencies as may be designated or created to make grants or loans.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"(d) The term 'law' shall mean any act or statute general or special of this State and shall include, without being limited to, the charter of any city or town.

"(e) The term 'National Industrial Recovery Act' shall mean the act of the Congress of the United States of America, approved June sixteenth, nineteen hundred and thirty-three, entitled an act to encourage national industrial recovery, to foster fair competition, and to provide for the construction of certain useful public works, and for other purposes, and any acts amendatory thereof and any acts supplemental thereto, and revisions thereof, and any further act of the Congress of the United States of America to encourage public works, to reduce unemployment and thereby to assist in the national recovery and promote the public welfare.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"2. The cities and towns of this Commonwealth shall have power and are thereby authorized:

"(a) To accept from any Federal agency grants for or in aid of any project.

"(b) To contract debts for any project, to borrow money for any project, and to issue its negotiable bonds to finance any project; and to provide for the rights of the holders of such bonds and to secure the same as hereinafter further provided.

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"(f) To acquire by purchase, gift or by the exercise of the power of eminent domain and to construct, reconstruct, replace, repair, operate, maintain, embellish, develop, better or improve any project; and to perform any such acts and to do any such things under, through, or by means of its own officers, agents and employees, or by contracts with private corporations, firms or individuals.

"(g) To make such contracts and execute such instruments containing such terms, provisions and conditions as

in the discretion of the governing body of such county, city or town may be necessary, proper or advisable for the purpose of obtaining or securing grants, loans or other financial assistance from any Federal agency pursuant to the National Industrial Recovery Act; and to make such other, further or different contracts and execute all instruments necessary or convenient in or for the furtherance of any project.

\* \* \* \* \* \* \* \*

"(i) To do all things necessary or convenient to carry out the powers expressly given in this act and to carry out any project.

"3. The governing body of any city or town shall have power and is hereby authorized from time to time to issue its negotiable bonds for the purpose of financing any project. Said bonds shall be authorized by resolution of the governing body and shall be issued in one or more series, shall bear such date or dates, mature at such time or times, not exceeding forty years from their respective dates, bear interest at such rate or rates, not exceeding six per centum (6%) per annum, payable at such time, be in such denomination, be in such form, either coupon or registered, carry such registration privileges, be executed in such manner, be payable in such medium of payment, at such place or places, and be subject to such terms of redemption, with or without premium, as such resolution or subsequent resolutions may provide. The bonds may be sold at public or private sale, for such price or prices, as the governing body shall determine, provided that the interest cost to maturity of the money received for any issue of bonds shall not exceed six per centum (6%) per annum.

\* \* \* \* \* \* \* \*

"5. Any resolution or resolutions of the governing body of any city or town authorizing any bonds, or any resolution or resolutions of the governing body of any county determining that it is advisable to contract a debt for any project, borrow money for any project, and issue negotiable bonds of the county to finance any project, or deter-

mining the tenor of such bonds or other matters relating thereto, or any subsequent resolution or resolutions of the governing body of any county, city, or town, may contain provisions which shall be a part of the contract with the holders of the bonds as to:

"(a) The payment of the principal of and interest on such bonds exclusively from the fees, rents, tolls or other charges or revenues or receipts of the project; and the pledging of such fees, rents, tolls, charges, revenues and receipts of the project to secure payment thereof, and the pledging or not pledging of the full faith and credit of the county, city or town;

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

"(j)　\*　\*　\*　\*　\*　\*　\*　\*

"(5) Any other matter required by any Federal agency as a condition precedent to the obtaining of a direct grant or grants of moneys for or in aid of any project, or to defray or partially to defray the cost of the labor and materials employed upon any project, or to obtain a loan or loans of moneys for or in aid of any project, from any Federal agency.

"6. Any city or town shall have the power, in addition to, and as supplemental to, any other powers conferred by this act to authorize the contracting of a debt, the borrowing of money, and the issuance of bonds for any project by an ordinance enacted in accordance with section one hundred and twenty-three of the Constitution of Virginia; and to submit the question of the issuance of such bonds to the qualified voters of such city or town at the general election next succeeding the enactment of such ordinances, or at a special election held for that purpose, in the manner or mode of procedure prescribed by chapter one hundred and twenty-two of the Code of Virginia, as amended, for the holding of such an election on the question of the issuance of bonds for any specific undertaking from which the city or town may derive a revenue. If the qualified voters shall at such election approve contracting the debt, borrowing the money, and issuing the bonds, the governing body of

such city or town shall thereupon authorize and issue such bonds in accordance with the provisions of this act applicable to the authorization and issuance of bonds by cities and towns.

"7. All proceeds received from the sale of the bonds of any county, city or town issued under this act, and all fees, rents, tolls, charges, revenues or other receipts derived from any project, and any moneys received from any Federal agency shall be paid to the treasurer or other financial officer of the county, city or town, who shall not commingle said moneys with any other moneys. * * *

\* \* \* \* \* \* \* \*

"10. The authorization and issuance of the bonds under this act shall not be dependent on or affected in any way by proceedings taken, contracts made, acts performed or done in connection with, or in furtherance of, any project undertaken by the county, city or town authorizing and issuing the bonds.

\* \* \* \* \* \* \* \*

"11. It is the purpose of this act to enable counties, cities, and towns to secure the benefits of the National Industrial Recovery Act, to encourage public works, to reduce unemployment and thereby to assist in the national recovery and promote the public welfare, and to these ends counties, cities and towns shall have power to do all things necessary or convenient to carry out said purpose in addition to the express powers conferred in this act; this act is remedial in nature and the powers hereby granted shall be liberally construed.

"12. *In so far as the provisions of this act are inconsistent with the provisions of any other law, the provisions of this act shall be controlling.* The powers conferred by this act shall be in addition and supplemental to the powers conferred by any other law; and bonds, interim certificates or other obligations, may be issued hereunder for any project *notwithstanding that other law, may provide for the issuance of bonds for like purposes and without regard to the requirements, restrictions or other provisions contained*

*in any other law,* and except as provided as to counties in section four, and as to cities and towns in section one hundred and twenty-seven of the Constitution of Virginia, without regard to any requirement for the approval by vote of the qualified voters of any county, city or town, of the contracting of a debt, the borrowing of money or the authorizing or issuing of bonds or other obligations. Bonds may be issued under this act notwithstanding any debt or other limitation prescribed by any other law, and the mode and method of procedure for the issuance of bonds under this act need not conform to the provisions of any other law.

"13. If any section, clause or provision of this act shall be unconstitutional or be ineffective in whole or in part, to the extent that it is not unconstitutional or ineffective it shall be valid and effective and no other section, clause or provision shall on account thereof be deemed invalid or ineffective.

"14. Except as may be otherwise provided in any contract theretofore entered into by any county, city or town with any Federal agency, no county, city or town shall undertake any project, contract any debt, borrow any money or issue any bonds pursuant to this act on and after two years and six months from the day on which this act becomes effective.

"Provided, however, that in the cities of Roanoke and Danville no money shall be borrowed and no bonds issued and no indebtedness incurred hereunder until and unless the proposal so to do shall have been submitted to the qualified voters of such city at a special election and approved by a majority of the qualified voters who vote in said special election. Said special election shall be ordered by the corporation court of such city upon request of the city council and shall be held according to the general laws applying to special elections.

"15. An emergency existing, this act shall be in force from its passage."

The bonded indebtedness of the city of Danville now

amounts to about $3,000,000. Its debt limit based upon eighteen per centum of the assessed value of its real estate is $3,725,984. Therefore, as is recognized by chapter 26, Acts 1933 (Ex. Sess.), section 127 of the Constitution of Virginia prohibits the issuance of a bond issue of the amount proposed in the ordinance of October 10, 1934, without the affirmative vote of a majority of the qualified voters of the city voting upon the question at an election duly called and held for that purpose, regardless of what may be the correct construction of chapter 26, Acts 1933 (Ex. Sess.).

The text of chapter 26, Acts 1933 (Ex. Sess.), as enacted by the General Assembly of Virginia, is broad enough to authorize a city to issue bonds thereunder for any "project" for which the National Industrial Recovery Act *authorizes* the President to make grants or loans through the Federal Emergency Administrator of Public Works or any other Federal agency.

The General Assembly of Virginia apparently was not ready to go so far. It prefixed to the act a title which effectually restricts the application of the act to the issuance of bonds issued "to enable counties, cities and towns to secure the benefits of" the National Industrial Recovery Act and other acts empowering the President to make grants or loans to counties, cities, and towns. In so far as the text of the act undertakes to authorize the issuance thereunder of bonds for purposes other than to enable a county, city, or town to secure the benefits of the Federal statutes mentioned it is void.

Section 52 of the Constitution of Virginia declares that "no law shall embrace more than one object, which shall be expressed in its title." The title to an act sets the bounds of the act; and to the extent that its provisions exceed those bounds they are void. *Irvine* v. *Com.*, 124 Va. 817, 97 S. E. 769.

The ordinances of January 27th and October 10th are both so drawn as to authorize the issuance of bonds for this project regardless of whether the Federal government shall

make a grant or loan in aid thereof or not. If there be no impediment to the submission to the voters of the bond issue proposed in the ordinance of October 10th, and it should be submitted to them and carried by the vote required by law to authorize an ordinary bond issue for the construction of such a plant, the city council would be empowered to issue the bonds and use the proceeds thereof for the construction of a hydro-electric plant, etc., whether the Federal government made any grant or loan in aid thereof or not. Having sought a bond issue which is not limited in its purposes to those contemplated by the act of 1933 (as restricted by its title), the laws (including section 3088) applicable to ordinary bond issues are applicable; and for this reason the judge of the corporation court was right in refusing to enter an order calling an election at which the proposed bond issue should be submitted to the voters of the city.

The briefs of counsel for both parties also consider at length these questions:

(a) Is the proviso with reference to the cities of Danville and Roanoke, contained in section 14 of the act of 1933, unconstitutional and void, or not?

(b) Has the provision of section 3088, which provides that "no other election for a similar purpose shall be held within one year after such election," any application to a proposal to issue bonds limited to the purpose of enabling a county, city or town to secure the benefits of the Federal statutes mentioned in the title to the Virginia act of 1933?

In view of the conclusion above stated, it is not necessary here to pass upon these questions.

The mandamus prayed will be refused.

*Mandamus refused.*

GREGORY, J., concurs in result.