# Wytheville

## RALPH O. ENNIS AND ERNEST C. SHULL, WHO SUE FOR THEMSELVES, ETC. V. TOWN OF HERNDON, ETC.

June 10, 1937.

Present, All the Justices.

The opinion states the case.

*R. R. Farr* and *Wilson M. Farr*, for the appellants.

*Stanley B. Hanes*, for the appellees.

CAMPBELL, C. J., delivered the opinion of the court.

The complainants are residents, voters, landowners and taxpayers of the town of Herndon, in Dranesville magisterial district, Fairfax county. The defendants are the town itself, the town council, council members, the mayor and town clerk. Complainants, in their bill, seek to restrain the defendants from issuing, negotiating or selling $87,400 of town bonds. Of this issue $50,000 was intended for sewer construction and $37,400 for a water system. Complainants were denied the relief sought and have appealed. No evidence has been taken, but the cause was heard upon bill, exhibits, an answer filed on behalf of all the defendants, together with a stipulation of counsel.

By resolution adopted on the 28th day of September, 1936, the town council requested the calling of an election, that there might be submitted to qualified voters the question whether or not the bonds should issue in the amounts and for purposes stated. Thereupon, by recess order of date October 3, 1936, the judge of the circuit court of the county ordered that a special election be held on October 20, 1936, to answer this interrogatory. Thereafter a committee was appointed, consisting of two members of the council and an unofficial

citizen of the town. This committee was directed to prepare, for the information of voters, plans showing sewer construction, its costs, the proposed charges to users and an estimate of assessments necessary to the establishment of a sinking fund and to pay interest on bonds. Such a circular was prepared and an election was held as ordered. A majority of 109 voters approved the sewer system and the issue of bonds for its construction and a majority of 131 voters approved the water system and its bond issue. This was certified to the circuit court, which declared these results by an order of December 8, 1936. A copy of that order was transmitted to the town council, which proceeded to advertise for bids on sewer bonds. The bid submitted by the National Bank of Fairfax was satisfactory and was accepted. Like proceedings will be had with respect to the water bonds, unless a restraining order issue.

There are a number of assignments of error. Assignment No. 1 reads:

"The purported resolution adopted September 28, 1936, by the said Town Council asking for the election is invalid and fails to comply with the mandatory requirements of section 3082 of the Code [as amended by Acts 1922, ch. 294, p. 492] and section 123 of the Constitution."

In support of that assignment these contentions are made:

"A. It fails to recite the expediency of borrowing money by said town.

"B. It fails to recite the amount of the proposed bond issue, the length of time for which said bonds were to run and interest to be paid thereon.

"C. The purpose for which the money realized from said bonds was to be used.

"D. That the said bonds were to be issued for the purpose of borrowing under the provisions of Class B, section 127 of the Constitution and were not to be included within the otherwise authorized indebtedness of said town.

"E. That it was presented to the mayor of said town for his approval and was duly approved by him."

Nothing further is said on this subject in the petition. This blanket charge is not enough. We are told in general

terms that the provisions of sections 123 and 127 of our Constitution and of the Code, section 3082, as amended by Acts 1922, ch. 294, p. 492, have not been observed. But there is nothing to indicate wherein failure rests. A petition for appeal is in the nature of a pleading and should, with certainty, indicate the errors relied upon. It "must lay [its] finger on the error." *Thurston* v. *Woodward*, 139 Va. 315, 123 S. E. 366. As a matter of fact, there is no patent defect upon the face of this resolution.

This is assignment No. 2:

"It is admitted, that by order entered by said lower court, September 19, 1935, Exhibit No. 3, a bond election on the identical question as to the issuance of sewer bonds in said town in the amount of Forty-Eight Thousand Dollars ($48,-000) was submitted to the voters of said town on October 3, 1935, and the voters cast a heavy majority against the issuance of said bonds, and the lower court was without power, under the provisions of section 3088 of the Code, to call within a period of one year, another election for a similar purpose, as was done by order entered October 3, 1936."

In the stipulations of counsel it appears:

"That by order duly entered by the Circuit Court of Fairfax County, Virginia, on the 19th day of September, 1935, an election was duly held in said town on the 3rd day of October, 1935, submitting to the qualified voters of said town, the question as to whether or not the bonds of said town should be issued to provide for locating and instituting a sewer system and a disposal plant in said town, and that in the election held in said town on the 3rd day of October, 1935, the majority of the qualified voters of said town, participating in said election, voted against the issuance of said bonds and that the question then submitted to the said voters for the issuance of bonds for the installation of a sewer system and disposal plant in said town is similar to the question submitted to the voters of said town by subsequent election held in said town on the 20th day of October, 1936."

By Code, section 3088, it is provided that where a majority of the qualified voters voting in an election, like that in judg-

ment, shall be against a proposed bond issue "no other election for a similar purpose shall be held within one year after such election." This statute came under review in *Wooding* v. *Leigh*, 163 Va. 785, 177 S. E. 310.

It there appears that an election was held on February 26, 1934. At it a bond issue was disapproved. The court declined to order another election to be held on November 6, 1934, which election, if held, would have determined the matters already determined by the preceding election held within the year.

In the instant case, the election which passed upon the $48,000 bond issue was held on October 3, 1935; that now under review was held on October 20, 1936. Conceding, for the purposes of argument, that these two elections were for similar purposes, such an election was not "held within one year after such election" (the first election).

Next, it is said that:

"3. The lower court had no right to enter in recess the order on October 3, 1936, purporting to call the election of October 20, 1936, as under Code, section 3083, an order calling an election for such purpose could only have been entered by said Court in term time or by the judge thereof in vacation."

The substance of this contention is that said order could only be entered by the court or judge thereof in term time or in vacation.

Code, section 5893, as amended by Acts 1920, ch. 5, p. 8, gives to judges of circuit courts power to perform during recess any duty and to transact any business authorized to be done by them in vacation.

It is next said:

"4. The recess order entered October 3, 1936, calling the election, failed to allow sufficient time between the date of said order and the date of the election, (October 20, 1936) and to make reasonable provisions to give due publicity to the election."

In that order are these provisions:

"It is further ordered that A. H. Kirk, the Mayor of the

said Town of Herndon do within ten days from the date hereof post at the Post Office, the Washington & Old Dominion Railway Station, Martz' Pharmacy, McGliney's Market and the Fire Engine House, a notice of the day of such election, the object of the same and the voting place at which will be received the votes; and further that notice of such election be inserted for two consecutive weeks in the "News-Observer" a weekly publication, published in the Town of Herndon; and that the proper election officers of the said Town of Herndon shall conduct the said election, all of said officers being duly registered and qualified voters of the said Town of Herndon, and the duties and liabilities of said officers shall be as prescribed in said statutes and such cases made and provided."

In the stipulation of counsel, this is said:

"* * * the Mayor of the said town on the 3rd day of October, 1936, duly posted and published notice of the proposed election to be held in said town on October 20, 1936, in accordance with the directions given him by the Judge of said Court by recess order entered by the Judge of said Court on October 3, 1936."

There is no statute which fixes the time which must elapse between the date of the order and the day of the election. Code, section 3083, leaves this to the sound judicial discretion of the judge. He "shall make such order as may be proper to give due publicity to such election."

It is contended that by analogy we should follow the rule laid down for bonds of counties and magisterial districts, the time in such cases being from ten to thirty days (Acts of Assembly, 1933, Ex. Sess., ch. 26, p. 50). This rule is not conclusive of the question involved. More time is necessary to give publicity to such a purpose in a county than in a small town. A majority of all the qualified voters of the town approved of each of these bond issues. If we assume that all qualified voters who did not vote were without notice, and with notice would have opposed the issues, the results would have been the same. 20 C. J., p. 231.

It is next said:

"5. The court, or the judge thereof in vacation, could only

enter an order calling an election on but one specific question, and was without power to submit to the qualified voters of said town at one election the questions of the issuance of bonds of said town for two specific purposes, to-wit, one, for a sewer system and disposal plant and, two, for a water system."

Code, section 3079, as amended by Acts 1930, ch. 217, p. 573, provides for what purposes towns may issue bonds. Among them are provisions for sewers and waterworks. Code, section 3082, as amended, tells us what must be done when it is proposed "to issue bonds for any purpose." The ordinance must state "the purpose for which the money realized therefrom is to be used." It is true that purpose is used here in the singular, but since towns are authorized to borrow money for many purposes, there would seem to be no adequate reason for requiring a special election in each instance. Voters should be told how proceeds of such bonds are to be applied. In this case they were not only given that information, but they were given an opportunity to vote separately on each of said undertakings. They did so vote, and, as we have seen, in each instance registered their approval. Here there could have been neither confusion nor misunderstanding.

Complainants next contend:

"6. The elimination of sewers to be installed on certain streets in said town by the Town Council, which by its prospectus and plan issued to the voters prior to the holding of said election, it had agreed to install, invalidates the proposed issue of sewer bonds."

Stipulations state facts which relate to this assignment:

"That the Town Council appointed two of its members to act as a committee with a citizen member of the town to prepare for the consideration of the voters of said town, as much information as could be obtained prior to the election on the proposed issuance of bonds for the sewer and water systems. This information was prepared and furnished in good faith and with the sole desire, intention and purpose of giving the voters in the election, and prior to the date thereof, such information as could be obtained. That on the streets alleged to have been eliminated from the first suggestion as to whether

or not the sewer would run there were only two who had agreed to tap on the town sewer when and if installed and due to underlying rock on said streets the cost of laying the system thereon was prohibitive, the estimate of costs thereof being in excess of $8,000 for the excavation and installation of a pumping station required due to the topography of the ground."

It is conceivable that voters might, by some prospectus, be induced to approve of a sewer system which gave relief to the town as a whole when they would not have endorsed a project which gave only partial relief. Such misinformation might be tainted with fraud, but that is not this case. The plan proposed, and which would have given relief to two citizens not now to be served, proved for economic reasons to be impracticable. It might be that a service promised in good faith and afterwards abandoned, if given, would have absorbed the entire appropriation. Such a contingency is always possible. Engineering difficulties which developed were ample to authorize this unimportant change.

This is the seventh and last assignment of error:

"Bonds in the aggregate amount proposed to be issued are not within the provisions of section 127 of the Constitution as revenue producing, are to be included in the bonded indebtedness of said town not falling within the exception of bonds for revenue purposes, are in excess of the maximum amount of bonds which the town can issue as prescribed by its charter, and which it can issue within the maximum limitation of eighteen per centum of the assessed valuation of real estate therein subject to taxation as shown by the last assessment for taxes, as provided by general law."

The original ordinance adopted by the town council declares that the indebtedness sought to be incurred "shall not be included under the constitutional limitations of eighteen percentum of the assessed valuation of the town's real estate." The purpose and intent of this bond issue we find stated in the stipulation:

"That it is the purpose and intention of the said town, acting through its Town Council, its Mayor and Clerk, to issue bonds

of said town in the aggregate sum of $87,400 for the purposes averred in the bill of complaint and to issue said bonds for specific undertakings from which the town will obtain a revenue as provided by section 3090 of the Code and section 127 of the Constitution, and that it is not the intention of the town, acting through its Council, Mayor and Clerk, to levy any tax for the purpose of creating a sinking fund and a fund to pay the interest on said bonds when same mature unless and until the revenues received from the operation of the proposed sewer system and water system be and become insufficient to create the appropriate sinking fund for the retirement of said bonds and the necessary fund for the payment of the interest thereon annually accruing."

Plainly the town could not issue bonds evidencing general indebtedness to an amount, including existing indebtedness, in excess of eighteen per centum of the assessed value of its real estate subject to taxation. (Constitution of Virginia, section 127.) It is also plain that this issue of $87,400 is in excess of such a sum.

This constitutional limitation is itself subject to a constitutional exception (sub-section b, section 127). It does not apply to bonds issued under conditions therein provided for when the proceeds therefrom are to be used for the purpose of "* * * a supply of water or other specific undertaking from which the city or town may derive a revenue; * * *." Such projects stand in a class apart. *McDaniel* v. *Clifton Forge*, 137 Va. 650, 120 S. E. 143.

Here the town's intent is plain. These projects are dealt with as revenue-producing undertakings, and it was never intended that these bonds were to be included in its general indebtedness, unless the revenue produced from the water and sewer system should afterwards prove to be insufficient.

Plaintiffs, moreover, contend that this bond issue is prohibited by a charter provision (Acts of Assembly, 1926, ch. 201, p. 358), which *inter alia* declares:

"No indebtedness shall be created beyond the ability of the council to pay within one year from its ordinary or special revenue or resources except on petition of two-thirds of the

resident taxpayers within the town, the council may issue notes or certificates of indebtedness, for the purpose named in the petition, not exceeding the sum of two thousand dollars." Section 9.

This charter provision covers current indebtedness and such matters as ordinarily arise from year to year in the administration of the town's affairs. It covers matters which are covered by Code, section 3080, sub-section (a), which in part reads:

"(a) Certificates of indebtedness, revenue bonds, or other obligations issued in anticipation of the collection of the revenue of such city or town for the then current year; provided, such certificates, bonds or other obligations mature within one year from the date of their issue, and be not past due, and do not exceed the revenue for such year."

Unquestionably, it seems to us that indebtedness of this character is not to be charged against the bond limit, just as revenue-producing projects are not to be charged against it.

When this charter was granted, every town in the Commonwealth had a right to establish waterworks (Code, section 3031), and a sewer system (Code, section 3064, amended by Acts 1928, ch. 134, p. 544), and with it, as self-executing, went the powers conferred by our Constitution. *Robertson* v. *City of Staunton*, 104 Va. 73, 51 S. E. 178. It also had power to issue bonds for such purposes (section 3081, Code of 1919):

"Any city or town may borrow money and issue bonds for the purpose of a supply of water or other specific undertaking from which the city or town may derive revenue, as provided in clause 'b' of section one hundred and twenty-seven of the Constitution."

This was the law when the charter of 1926 was granted, and it was not repealed by that charter, for repeal by implication is not favored. *McDaniel* v. *Clifton Forge, supra*. Therefore, there is no doubt about the power of the town to issue these bonds unless such doubt arise out of an amendment to section 3081a [Code 1924] passed in 1930 (Session Acts 1930, ch. 217, p. 573), which reads:

"The council of any city or town in this Commonwealth

which is authorized to acquire, maintain, or establish a system of water works, electric lights or other lighting system, or other specific undertaking from which the city or town may derive a revenue, shall have power and authority, in accordance with section one hundred and twenty-seven-b (127-b) of the Constitution of Virginia, to issue so many bonds as may be necessary to acquire, maintain or establish such system of water works, electric lights or other lighting system, or other specific undertaking. The powers conferred by this section are hereby granted to all cities and towns in this Commonwealth, notwithstanding any special limitations other than debt limitation contained in special charters, or amendments thereto, heretofore granted to such cities or towns, and such powers shall be deemed supplemental to, cumulative of and in addition to all other powers heretofore granted by general law or special act."

We have seen, however, that the debt limitation written into section 9 of the town's charter (Laws 1926, ch. 201) was not a limitation on bonded indebtedness but upon current yearly accounts. The right to issue bonds was not changed by the charter at all when that charter was granted.

There is no error in the decree appealed from and it is affirmed.

*Affirmed.*