# Wytheville.

## ROBERTSON v. CITY OF STAUNTON.

### June 15, 1905.

1. CONSTITUTIONAL LAW—*Municipal Indebtedness—Limit Prescribed by Constitution, Sec. 127—Code, Sec. 1039.*—The limitations of section 127 of the Constitution (1902) apply to the charters of all cities and towns which do not in terms authorize a percentage of indebtedness larger than eighteen *per cent.* of the assessed valuation of real estate in such city or town. The act of March 20, 1875, carried into the Code of 1887 as Sec. 1039 limiting the right of a city or town to create an indebtedness beyond seventeen *per cent.* of its real and fifteen *per cent.* of its personal property, was not a grant of power to cities and towns to create indebtedness to that amount, but was a limitation on their powers where none previously existed, and hence section 127 of the Constitution applies to such cities and towns and limits their right to issue bonds or other interest bearing obligations to an amount not exceeding eighteen *per cent.* of the assessed valuation of their real estate. Upon the adoption of the Constitution this act perished by reason of its repugnancy.

2. CONSTITUTIONAL LAW—*Self-executing Provisions—Constitution of Va., Sec. 127.*—Constitutional provisions of a negative character are generally, if not universally, construed to be self-executing. They are also self-executing if they supply sufficient rules by means of which the right given may be enjoyed and protected, or the duty imposed be enforced. As the Legislature could not authorize a city or town to contract indebtedness beyond the limit prescribed by sec. 127 of the Constitution, no legislation is needed to put that section of the Constitution into operation, and it operates *proprio vigore.*

Appeal from a decree of the Corporation Court of the city of Staunton in a suit in chancery. Decree for defendant. Complainant appeals.

*Reversed.*

The opinion states the case.

*S. D. Timberlake, Jr.,* for appellant.

*Braxton & McCoy,* for the appellees.

KEITH, P., delivered the opinion of the court.

This cause originated in a bill filed by the appellant, Alexander F. Robertson, in the Corporation Court of the city of Staunton, praying an injunction against the issue by the city of five bonds of the denomination of one hundred dollars each, which were to be sold and the proceeds applied to improving the streets and alleys of that city.

At the time of the adoption of the ordinance providing for the issue of these bonds, the outstanding interest-bearing bonds of the city of Staunton aggregated, in round numbers, $578,000, or nearly twenty-one per cent. of the assessed value of all the real estate within the city subject to taxation. The injunction was prayed for upon the ground that the issue of the bonds would be illegal, and in contravention of the limitation imposed upon municipalities in respect to the creation of indebtedness by section 127 of the Constitution of the State.

A temporary injuction was awarded, and the city filed its answer to the bill. It admitted that its bonded indebtedness was already largely in excess of eighteen *per centum* of the assessed value of the real estate within the city subject to taxation, but claimed that it came within the proviso of section 127 of the Constitution, because its charter authorized the city to contract debts and issue bonds without limit, and that it was, therefore, authorized by its charter, within the meaning of section 127 of the Constitution, to issue bonds without any limitation or restriction. So much of the charter of the city of Staunton as is pertinent to this inquiry, is as follows:

"The city council may, in the name of and for the use of the city, contract loans, or cause to be issued certificates of debts, or bonds; but such loans, certificates, or bonds, shall not be irredeemable for a period greater

than thirty-four years; provided, however, that said council shall not contract such loans, or issue such certificates of debt, or bonds, for the purpose of subscribing to the stock of any company incorporated for a work of internal improvement, or other purposes, without being first authorized so to do by three-fourths of the legal voters of the city voting on the question; and the council shall, when such debt or loan is created, provide a sinking fund for the payment of the same; and provided further, that the said council shall not endorse the bonds of any company whatsoever without the same authority."

On March 20, 1875, the Legislature passed an act as follows:

"It shall not be lawful for any city or town to create, at any time, an indebtedness in excess of seventeen *per cent.* of the assessed value, under the State assessment laws, of its real, and fifteen *per cent.* of its personal property: Provided, that this section shall not apply to any city or town whose charter already determines the limit of aggregate indebtedness allowed to be created by it, except the town of Danville." Acts 1874-'5 p.

This act was carried into the Code of 1887 as section 1039.

Section 127 of the Constitution is as follows:

"No city or town shall issue any bonds or other interest-bearing obligations for any purpose, or in any manner, to an amount which, including existing indebtedness, shall at any time exceed eighteen *per centum* of the assessed valuation of the real estate in the city or town subject to taxation, as shown by the last preceding assessment for taxes; provided, however, that nothing above contained in this section shall apply to those cities and towns whose charters, existing at the adoption of this Constitution, authorize a larger percentage of indebtedness than is authorized by this section."

Appellant contends that section 1039 of the Code was repealed by the Constitution. It was certainly repealed by the Legislature. *Acts* 1902-'3-'4, pp. 412, 691. It applied while in force to the city of Staunton. It did not confer the power to create indebtedness, but operated as a limitation upon the power conferred by the charter. As it was lawful, by its terms, at any time, for a city or town to create an indebtedness not in excess of seventeen *per cent.* of the assessed value of its real, and fifteen *per cent.* of its personal property, it was plainly in conflict with section 127 of the Constitution, which imposed a limit

upon the issue of bonds by a city or town, for any purpose, in excess of eighteen *per cent.* of the assessed value of the real estate in the city or town subject to taxation. Upon the adoption of the Constitution, therefore, the act perished on account of its repugnancy.

It is important to observe that section 1039 was not, and was never intended to be, a source of power to issue bonds to the extent of seventeen *per cent.* upon realty and fifteen *per cent.* upon personalty subject to taxation, but merely imposed a limit upon all cities and towns to which it applied—that is to say, to all cities and towns of the Commonwealth except those whose charters fix the "limit of aggregate indebtedness allowed to be created by it except the town of Danville." If section 1039 could be treated, as the source of power, as authorizing cities and towns to issue bonds up to the limit which it imposes, and as entering into the charters of cities and towns existing at the time of the adoption of the Constitution, then section 127 of the Constitution would be practically inoperative. It limits the issue of bonds to eighteen *per cent.* of the assessed value of real estate, while section 1039, if to be regarded as a source of power, limits the city or town to seventeen *per cent.* upon realty and fifteen *per cent.* upon personalty, so that the aggregate indebtedness authorized by the act would necessarily exceed eighteen *per cent.* of the assessed valuation of real estate in all towns in which the value of personalty constituted more than one-eighteenth of the value of the realty, a construction which would render section 127 practically nugatory.

We think that by a proper construction of section 127 of the Constitution it is to be taken as dealing with the several legislative charters of cities and towns of the State, and that the general laws, by which cities and towns are regulated, perished with the adoption of the Constitution, if repugnant to it, or were left by that instrument to be dealt with by the Legislature in the ordinary course of legislation; and that the limitations of section 127 apply to the charters of all cities and towns which

do not in terms authorize a percentage of indebtedness larger than that named in the section—that is to say, eighteen *per cent.* of the assessed valuation of real estate in the city or town subject to taxation.

It is proper for us to consider whether or not the section of the Constitution to which we have referred is self-executing or requires legislative action to render it operative.

Provisions of a Constitution of a negative character are generally, if not universally, construed to be self-executing. The fifteenth amendment of the Constitution of the United States illustrates this rule. It provides that the right of citizens of the United States to vote shall not be denied or abridged on account of race, color, or previous condition of servitude. "To this extent," says Mr. Cooley (Cooley on Constitutional Lim. (7 Ed)., p. 120'), "it is self-executing, and of its own force it abolishes all distinctions in suffrage based on the particulars enumerated. But when it further provides that 'Congress shall have the power to enforce this article by appropriate legislation,' it indicates the possibility that the rule may not be found sufficiently comprehensive or particular to protect fully this right to equal suffrage, and that legislation may be found necessary for that purpose. Other provisions are completely self-executing, and manifestly contemplate no legislation whatever to give them full force and operation."

And generally, says Cooley (p. 121) : "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law."

If we have rightly construed section 127, there can be no doubt that it operates *proprio vigore.* As was said by the Supreme Court of the United States in *Doon* v. *Cummins,* 142 U. S. 366, 12 Sup. Ct. 220, 35 L. Ed. 1044, "No legislation can

confer upon a municipal corporation authority to contract indebtedness which the Constitution expressly declares it shall not be allowed to incur."

So far, therefore, from this provision requiring legislative authority to make it operative, it would of its own inherent force have rendered of no avail a statute which undertook to authorize what it has prohibited.

We are of opinion that there is error in the decree of the Corporation Court, for which it must be reversed.

*Reversed.*