## CIRCUIT COURT OF THE CITY OF RICHMOND

Emmett J. Jafari

v.

Floyd A. Wiggins, Jr., et al.

March 20, 1997

Case No. LA-2249-1

BY JUDGE MELVIN R. HUGHES, JR.

This case is before the court on defendants' Demurrer and plaintiff's Motion to Strike the Demurrer, which the court will consider as plaintiff's response to defendants' Demurrer. The court has previously sustained defendants' demurrers in this case on December 15, 1995, and on July 9, 1996, giving plaintiff leave to amend his Motion for Judgment in each instance. As before, plaintiff is alleging various claims against Floyd A. Wiggins, Jr., who is identified as the Manager, Department of Safety and Security for the City of Richmond Public Schools (R.P.S.). In this Second Amended Motion for Judgment, as with the original Motion for Judgment, plaintiff alleges claims against Melvin Law, chairman of the School Board of Richmond Public Schools. Also, for the first time, plaintiff sues the City of Richmond School Board. For the reasons that follow the court will sustain the demurrer to this third pleading without leave to amend. For purposes of demurrer, the court will consider the allegations in the second Amended Motion for Judgment as true for purposes of determining their legal sufficiency. *See Penick v. Dekker*, 228 Va. 161 (1984).

Plaintiff is proceeding *pro se*. The allegations in the instant pleading and the two prior ones are rambling and somewhat confusing; a close reading is required to determine what is being said. Plaintiff says a lot in this pleading as he has in the two prior ones. The court will try to summarize what is alleged and sort through the various claims and assertions.

The case arises out of a complaint made to plaintiff's supervisor, Wiggins, while plaintiff was employed as a security officer "under contract" for R.P.S. Plaintiff seeks $50,000 in compensatory damages, unspecified punitive damages, and legal costs as a result of R.P.S., alleged inadequate handling of the complaint against him.

Jafari states that he is a native and forty year resident of Richmond who has enjoyed a good reputation in the community. From November, 1993 to May, 1995, the R.P.S. employed Jafari as a Safety Resource Officer. He was designated as a "Special Policeman," wore a uniform, and taught classes on safety, self-control, and self-esteem as well as other topics.

Wiggins, as Manager of the Department of Safety and Security for R.P.S., was Jafari's direct supervisor. According to Jafari, Wiggins informed Jafari of a March 2, 1995, telephone conversation in which an individual named Qadaffi made a series of unspecified complaints and allegations against Jafari. Wiggins then proceeded to institute hearing procedures to investigate the complaints. Wiggins also set a time limit for Qadaffi to "turn in his compliant against Jafari." Despite Qadaffi's failure to comply with Wiggins' time limit, Wiggins continued to pursue the complaint against Jafari.

Beginning March 6, 1995, Jafari made numerous objections to the manner in which Wiggins was handling the complaint. In addition, Jafari's attempts to address the allegations through the R.P.S. grievance system were unsuccessful due to the efforts of Wiggins. Also, Jafari contends that Wiggins allowed Qadaffi's complaint that Jafari intimidated him [Qadaffi] and "abused his authority under color of policeman" to leak beyond the R.P.S. Office of Safety and Security (OSS). At this time Jafari resigned his position.

Jafari claims that Melvin Law was aware of Wiggins' actions and Jafari's attempts to address them. Jafari states that Law summoned both Wiggins and Jafari to a school-board session. However, Law allowed only Wiggins to speak while not allowing Jafari a chance to be heard.

According to Jafari:

(1) Wiggins' initial institution of hearing procedures regarding Qadaffi's complaints against Jafari were "arbitrary and capricious, and contrary to R.P.S. Bylaws."

(2) Wiggins continued pursuit of the Qadaffi's complaint against Jafari, despite Qadaffi's failure to meet Wiggins' time limit, was a gross abuse of Wiggins' authority.

(3) Wiggins' interference with Jafari's attempt to address the complaints against him through the R.P.S. grievance system was "malicious in intent, contrary to his [Wiggins'] duty as Jafari's direct supervisor, and violative of Bylaws and the Code of Virginia."

(4) Wiggins' allowing Qadaffi's complaint against Jafari to be leaked outside the security office occurred "with a reckless disregard for the invalid, uninvestigated, and untrue nature of the complaint, slandering, defaming and libeling Jafari's good name."

(5) Respondent, Lucille M. Brown, Superintendent of R.P.S., (or persons under her authority) was aware of Wiggins' actions and Jafari's attempts to address the allegations but failed to perform her duty to intervene, a duty required by R.P.S. bylaws and the Code of Virginia.

(6) As a result of the irreparable damage to his reputation and denial of his due process rights by those whose duty it was to protect his rights, Jafari was forced to resign.

(7) Law failed to act on his duty to intervene in accordance with R.P.S. bylaws and the Code of Virginia.

Jafari claims that he "had been damaged in his good name, denied procedural due process entitlement, embarrassed, humiliated, coerced, subjected to an abuse of authority, forced to halt youth and civic work in pursuit of these matters, and forced to resign and pursue other employment, in light of the tooth [sic] lack of adherence to R.P.S. Bylaws by these Respondents or persons and employees under their authority and/or supervision."

Plaintiff alleges a violation of the Virginia Privacy Protection Act. To support his claims, he states that an unfounded complaint against him, which contained matters of a private, familiar, and confidential nature, was released to person(s) outside the OSS by Wiggins.

In their demurrer, defendants state that the allegations in the second amended Motion for Judgment are insufficient to make a claim of violation of the Virginia Privacy Protection Act of 1976, § 2.1-377 *et seq.* of the Code of Virginia and that damages are not available for violations of the Virginia Privacy Protection Act. Defendants are correct on this point, as the Privacy Act does not provide for monetary damages, but only for injunctive relief. See *Vansant & Gusler, Inc. v. Washington*, 245 Va. 356 (1993). Therefore, defendant's demurrer as to this claim is sustained.

Plaintiff also claims defamation under Virginia Code § 8.01-45, the insulting words statute. As the basis for this claim, plaintiff alleges that Wiggins altered and rewrote an unfounded and untrue complaint concerning him, stating that "The complainant alleges that on Thursday, March 2, 1995, at approximately 12:10 p.m. you harassed him at his residence and that your official attire was intimidating." Such words do not "tend to violence and breach of the peace" as required under Virginia § 8.01-45. Therefore, the demurrer is sustained as to this claim. As for any common law defamation the

pleadings are deficient because they fail to allege a publication by anyone of defamatory statements. If made, any such statements described would be protected by qualified privilege. *See Southeastern Tidewater Opportunity Project v. Bade*, 246 Va. 273 (1993); *Montgomery Ward & Co. v. Nance*, 165 Va. 363 (1935).

Plaintiff also brings a due process claim against Wiggins. Plaintiff claims that Wiggins, in neglect of his duty as his immediate supervisor, refused to avail him of or allow him to enter into the grievance procedure of R.P.S., avoided plaintiff, and instructed office staff to refrain from assisting Jafari.

Plaintiff also asserts a due process claim against the School Board and Melvin Law, Chairman of the School Board. This claim is that officials of the School Board were aware of and acknowledged the acts and omissions of Wiggins, but they did not take corrective action and neglected to receive and address plaintiff's grievance. Defendants argue that the second amended motion for judgment does not allege that plaintiff filed a grievance under the Procedure of Adjusting Grievances of the Board of Education or that he presented any grievance matter to the School Board as required by law. They say that the grievance procedure and any alleged failure to adhere to it does not give rise to a cause of action for damages.

Both state and federal constitutions contain provisions pertaining to "due process of law." Plaintiff does not allege any individual actions taken by any member of the School Board. All actions that are alleged to be taken by school board officials were in their representative capacity as a school board. Further, the supposed actions were not affirmative actions by the School Board but acts by omission.

Regarding due process under the Virginia Constitution, first, in the absence of a statute waiving immunity, a School Board has immunity. See *Crabbe v. School Board*, 209 Va. 356, 358 (1968); *Kellam v. School Bd. of the City of Norfolk*, 202 Va. 252 (1960). Since *Crabbe* and *Kellam*, the General Assembly enacted the Virginia Torts Claim Act in 1981, § 8.01-195.1. The Act removes school boards from its purview. See § 8.01-195.2. Second, as defendants observe, Jafari has not alleged he actually filed a grievance. Third, while the Virginia Supreme Court has recognized and approved damage claims to enforce due process rights found in the Virginia Constitution, this has been confined to suits seeking redress for takings of property on the basis that such provisions are self executing. *Morris v. Tunnel Dist.*, 203 Va. 196 (1962); *Burns v. Board of Supervisors*, 218 Va. 625 (1977).

If plaintiff claims a denial of due process under the United States Constitution, such would be founded on the Fourteenth Amendment because of state action. Congress was given the power to enforce its provisions by

appropriate legislation. Congress did this in the enactment of the Civil Rights Act of 1871. The first section of the Civil Rights Act, codified as 42 U.S.C. § 1983 establishes liability for violation of constitutional rights deprived "under color of state law." If plaintiff's claim here can be seen as a 42 U.S.C. § 1983 action, the allegations in support are too vague and indefinite to mount a cause of action on this, the third try. For example, plaintiff suggests that Wiggins prevented or precluded him from filing a grievance but does not state what actions Wiggins or anyone else he names took to accomplish this. To the extent that Wiggins or Law were negligent in their handling of the matter, mere negligence is not a sufficient basis for unconstitutional conduct under § 1983 insofar as such action may involve a due process violation. *Daniels v. Williams*, 474 U.S. 327 (1986). Moreover, Jafari states he resigned from his position. Jafari's claims of a deprivation of due process are based on an abstract value of constitutional rights where no injury compensable in damages is evident. *See Memphis Community Sch. v. Stachura*, 477 U.S. 299 (1986).

Plaintiff's final claim is brought under § 22.1-295. The statute reads:

> The teachers in the public schools of a school division shall be employed and placed in appropriate schools by the school board upon recommendation of the division superintendents.

The statute applies to teachers and is not applicable to plaintiff. Although plaintiff states that he taught a class, whatever claim he may have arose in his capacity as a Safety Resource Officer. Further, § 22.1-295 does not grant a private cause of action for damages, and the court will not create one. *See Allen v. Lindstrom*, 237 Va. 489, 500 (1989). Therefore, the demurrer as to this cause of action is sustained.

For the foregoing reasons defendants' demurrer to the Second Amended Motion for Judgment is sustained without leave to amend.