# CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE

Abraham Gray, Jr.,
adm'r of the estate of
Frederick Gray,
deceased

v.

Douglas Rhoads et al.

July 2, 2001

Case No. 99-95

BY JUDGE LYDIA CALVERT TAYLOR

This civil action was brought by Plaintiff, administrator of the estate of his son, Frederick Gray, against several police officers, their supervisors, and the County of Albemarle asking for damages as a result of the death of the Plaintiff's son from a shot fired by one of the individual police defendants. All judges in the circuit having recused themselves, the undersigned was appointed to preside over the case by the Virginia Supreme Court. After Defendants demurred to the Plaintiff's Motion for Judgment, briefs were filed, and arguments heard from both sides.

Plaintiff alleges that on May 15, 1997, Albemarle County Police Officer Amos Chiarappa and four other Albemarle County police officers, all white, were dispatched to a reported domestic disturbance in an apartment complex, which involved the decedent, Plaintiff's son, who was black, and his

girlfriend, who was white. The Plaintiff claims that, while the police officers were handcuffing his son, the son apparently broke free, and may have advanced toward Officer Chiarappa, at which point the officer fatally shot Plaintiff's son, the decedent.

Plaintiff sued Captain Douglas Rhoads and John Miller, individually and in their capacities as Captain and Chief, respectively, of the Police Department of Albemarle County; the County of Albemarle; John Chiarappa, the police officer who shot decedent; and four other police officers who had been at the scene, David Wallace, Jamie Hanover, Phil Giles, and Sharn Perry. The issues to be decided are: (1) whether the Plaintiff can maintain an action against the County of Albemarle; (2) whether the Plaintiff has alleged facts to state a claim under the Virginia Wrongful Death statute; (3) whether the Plaintiff can maintain an action against the individual Defendants for deprivation of certain rights under the Virginia Constitution, including decedent's rights (a) to not be deprived of life without due process, (b) against unreasonable seizure,[1] and (c) to equal treatment and freedom from race discrimination; (4) whether the Plaintiff can maintain an action against the individual Defendant supervisors for the torts of negligent training, supervision, hiring, or retention; and (5) whether the Plaintiff's claims against all individual Defendants are barred by sovereign immunity.

The Plaintiff's claims in this action are state law claims only. Plaintiff originally brought this action in this Court; Defendants then removed the case to federal court. Plaintiff took the position in federal court that the constitutional claims asserted in this case were purely state constitutional claims, leaving no federal jurisdiction. Apparently in reliance on that assertion, the federal district court remanded the case to state court, where it was assigned to this judge.

## *Discussion*

### A. *Liability of Albemarle County*

It is well settled in Virginia that counties, which are political subdivisions of the state, can only be sued in the manner prescribed by statute. *Parker v. Prince William County*, 198 Va. 231, 234, 93 S.E.2d 136, 138 (1956). In

---

[1]  Plaintiff also claims that the alleged unreasonable seizure violated his rights under § 19.2-59 of the Virginia Code. The Court must resolve whether that statute grants a right of recovery for unreasonable *seizure*, as opposed to only for unlawful *searches*.

order to sue Albemarle County in this action, the Plaintiff had to first present his claim to the governing body of the County in accordance with Code of Virginia § 15.2-1248:

> No action shall be maintained by any person against a county upon any claim or demand until such person has presented his claim to the governing body of the county, unless the governing body has entered into a binding arbitration agreement or there is a provision in a written contract with the county to submit to arbitration any controversy thereafter arising. When there exists such a provision in a contract or there is a written agreement to arbitrate, the provisions of the Uniform Arbitration Act, Article 2 (§ 8.01-581.01 *et seq.*) of Chapter 21 of Title 8.01, shall apply.

Because the clear wording of the statute does not limit the claims or demands subject to its requirements to contract actions, this Court holds that its statutory limitation governs tort and civil rights claims against counties as well. If a claim is presented to the governing body and is disallowed in whole or in part, a plaintiff has a right of appeal within thirty days of the governing body's decision, in accordance with Code of Virginia § 15.2-1246:

> When a claim of any person against a county is disallowed in whole or in part by the governing body, if such person is present, he may appeal from the decision of the governing body within thirty days from the date of the decision. If the claimant is not present, the clerk of the governing body shall serve a written notice of the disallowance on him or his agent, and he may appeal from the decision within thirty days after service of such notice. In no case shall the appeal be taken after the lapse of six months from the date of the decision. The appeal shall be filed with the circuit court for the county. No appeal shall be allowed unless the amount disallowed exceeds ten dollars. The disallowance may be appealed by serving written notice on the clerk of the governing body and executing a bond to the county, with sufficient surety to be approved by the clerk of the governing body, with condition for the faithful prosecution of such appeal, and the payment of all costs imposed on the appellant by the court.

The Supreme Court in *Burk v. Porter*, 222 Va. 795, 284 S.E.2d 602 (1981), held that the predecessor statutes to § 15.2-1246 *et seq.* "provide the exclusive procedure for litigating claims against a county," and that "[f]ailure

to allege compliance with these statutes is fatal to an action against a county." Nothing in that opinion limited the statutory coverage to contract claims, as opposed to those under tort law. The Supreme Court also used broad language in holding, in *Nuckols v. Moore*, 234 Va. 478 (1987), that the language of the predecessor statute, "demonstrates a legislative intent to provide a comprehensive procedure for the presentation, auditing, challenge, defense, and judicial review of *monetary* claims against a county." *Id.* at 481, 362 S.E.2d at 717 (emphasis in original). Only non-monetary claims against a county would be exempt from the statutory requirement. *Id.*

The Plaintiff has failed to allege in the Motion for Judgment that he has complied with these provisions; in fact, at the February 5, 2001, hearing, Plaintiff acknowledged that he had not filed a claim as required by § 15.2-1248. Therefore, this Court sustains the Defendants' demurrer and dismisses the claim against Albemarle County with prejudice.

## B. *Count I: Wrongful Death*

The first count in the motion for judgment claims that all defendants are jointly and severally liable for wrongful death.

Defendants assert that wrongful death is a "right of action," not a "cause of action," and that as such wrongful death is only a vehicle by which the Plaintiff may pursue a cause of action that exists under the common law of Virginia. However, *Horn v. Abernathy*, 231 Va. 228, 343 S.E.2d 318 (1986), cited by the Defendants, states that both the right of action and the cause of action were created by statute in derogation of the common law. *Id.* at 237, 343 S.E.2d at 323. Section 8.01-50 of the Code of Virginia, specifies that:

A. Whenever the death of a person shall be caused by the wrongful act, neglect of any person . . . and the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action . . . and to recover damages in respect thereof, then, and in every case, the person who . . . would have been liable, if death had not ensued, shall be liable for an action for damages. . . .

In this Court's opinion, this statute creates no new cause of action, but continues, transmits, or substitutes the right to sue which the decedent has until his death, permitting a personal representative to pick up the right of the deceased to sue for the benefit of the decedent's beneficiary.

Plaintiff's memorandum in opposition to demurrer asserts causes of action, with some supporting facts, for gross negligence, assault and battery,

false arrest, false imprisonment, negligent hiring, and negligent training and supervision. However, the Motion for Judgment contains none of the facts contained in his brief, nor any other facts to support each of these causes of action. Plaintiff uses the term "wrongful death" as "shorthand" for each of these causes of action, but, as discussed at the February 5, 2001, hearing, the Motion for Judgment itself does not meet the minimum criteria needed to put the Defendants on notice as to the claims asserted against each of them.

For these reasons, the Defendants' demurrer as to Count I is sustained, and the Plaintiff is given leave to amend the Motion for Judgment to include supporting facts for each of the causes of action that underlie his claim for wrongful death.

### (C)(1) *Count II: Deprivation of Life Without Due Process*

The second count in the Motion for Judgment claims that the defendants are jointly and severally liable for violating the decedent's rights against deprivation of life without due process as guaranteed by the Virginia Constitution. Although the Motion for Judgment does not cite what specific constitutional provisions grant such a right, Plaintiff in his memorandum in opposition to demurrer cites three separate constitutional provisions for support: (1) Article I, § 11 ("That no person shall be deprived of his life, liberty, or property without due process of law . . . and that the right to be free from any governmental discrimination upon the basis of religious conviction, race, color, sex, or national origin shall not be abridged . . . ."); (2)Article I, § 8 ("[A man] shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers."); and (3) Article I, § 1 ("That all men are by nature equally free and independent and have certain inherent rights, of which, when they enter into a state of society, they cannot, by any compact, deprive or divest their posterity; namely, the enjoyment of life and liberty. . . .")

The Virginia Supreme Court discussed private rights of action under the Virginia Constitution in *Robb v. Shockoe Slip Foundation*, 228 Va. 678, 324 S.E.2d 674 (1985). The Court in *Robb* stated that, in order to enforce a private right of action under the Virginia Constitution, the constitutional provision in question must be self-executing. After discussing the history of self-executing provisions, the Court noted the following: First, a constitutional provision is self-executing when it expressly so declares. Second, even without benefit of such a declaration, constitutional provisions in bills of rights and those merely declaratory of common law are usually considered self-executing. Third, the same is true of provisions that specifically prohibit particular conduct.

("Provisions of a Constitution of a negative character are generally, if not universally, construed to be self-executing," wrote the Court in *Robb*, citing *Robertson v. Staunton*, 104 Va. 73, 77 (1905)). Further, the Court noted in *Robb*, "A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right given may be employed and protected, or the duty imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law." *Robb*, 228 Va. at 681, 324 S.E.2d at 676 (citing *Newport News v. Woodward*, 104 Va. 58, 61-62 (1905)).

In *Robb*, the Supreme Court was considering Article XI, § 1, which declared it to be "the policy of the Commonwealth to conserve, develop, and utilize its natural resources, public lands, and historical sites and buildings." The Court found that provision *not* to be self-executing because (1) it did not contain a declaration of self-execution, (2) it was not contained in the Bill of Rights of the Virginia Constitution, and (3) it did not lay down rules by means of which the principles it posits may be given the force of law. *Robb*, 228 Va. at 682, 324 S.E.2d at 676. The Supreme Court in *Robertson v. Staunton*, 104 Va. 73, 77 (1905), had looked to intent as a key factor in deciding if a provision is self executing: "The question is one of intention in every case, and, if it is apparent that no subsequent legislation is necessary to carry such provision into effect, then such provision is self-executing." *Id.*

As to Article I, § 11, Virginia has no prior cases directly dealing with life and liberty; all of the prior cases that hold that section of Article I to be self-executing are property cases.[2] *See, e.g., Jenkins v. County of Shenandoah*, 256 Va. 467 (1993) (sovereign immunity did not bar suit against county seeking compensation for damages to property; constitutional section self-executing; property action not a tort action but a contract action and consequently not barred by sovereign immunity); *Morris v. Elizabeth River Tunnel Dist.*, 203 Va. 196 (1962) (property provision self-executing; river tunnel district and tunnel commission not immune); *Swift & Co. v. City of Newport News*, 105 Va. 108 (1906) (provision forbidding damage to private property without just compensation self-executing). The federal cases and lower state court decisions cited to or found by this Court awarding damages under that

---

[2] Federal suits for deprivation of life and liberty as guaranteed by the Fifth Amendment and made applicable to the states by the Fourteenth Amendment to the U. S. Constitution are brought under 42 U.S.C. 1983, *et seq.*, as the statutory execution of private causes of action to enforce those constitutional guarantees; rather than directly pursuant to those guarantees, because those constitutional provisions are not as self-executing as they pertain to life and liberty.

Virginia constitutional provision also dealt solely with property, not life or liberty. For example, in *Graham v. Mitchell*, 529 F. Supp. 622 (E.D. Va. 1982), a federal district court in Virginia found that the Virginia Constitution provides due process protection of one who has been unlawfully or improperly deprived of his *property*; state remedies, while they may not provide all of the relief available under § 1983, may be adequate to satisfy the requirements of due process). To the same effect is *Jafari v. Wiggins*, 41 Va. Cir. 514 (1997), in which the circuit court opined, "[W]hile the Virginia Supreme Court has recognized and approved damage claims to enforce due process rights found in the Virginia Constitution, this has been confined to suits seeking redress for takings of property on the basis that such [property-taking] provisions are self-executing."

The reason the cases finding Article I, § 11, of the Virginia Constitution to be self-executing all deal with deprivation of *property*, not life, is obvious; that provision expressly provides a remedy for takings of property by a governmental entity, stating that "private property shall not be taken for public use *without just compensation*." (emphasis added). This language, then, renders Article I, § 11, self-executing, but only to the extent of deprivation of property; the section does not include similar language for deprivations of life and liberty. If the drafters had intended to provide similar rights and remedies for deprivation of life and liberty, they could have done so by including such language in that provision. They did not.

On the other hand, Article I, § 8, is self-executing because it so declares, and as such, requires no further legislation to enforce its provisions. ("The provisions of this section shall be self-executing.") This section, however, is entitled "Criminal Prosecutions," and includes — among other rights to be afforded to a defendant all in a criminal prosecution context — the right to confront one's accusers, to call for evidence in one's favor, to a speedy trial, to not incriminate oneself, and to not be subject to double jeopardy. The phrase the Plaintiff cites, in context, refers to a criminal defendant's right, in court, to not be deprived of life or liberty except by law or the judgment of his peers or a judge. In context, and by its wording, this section does not appear to apply in a civil context and, therefore, does not provide a private *civil* right of action for violation of the particular provision cited by the Plaintiff, except for deprivation of rights of an accused caused in the setting of a criminal prosecution. No Virginia cases and no out-of-state cases interpreting analogous constitutional provisions could be found holding otherwise.

Article I, § 1, is unlike the other constitutional sections cited by the Plaintiff. Although it is contained in the Virginia Constitution's Bill of Rights, it neither expressly declares that it is self-executing, as does Article I, § 8, nor

does it contain language that supplies a sufficient rule and remedy, as do Article I, § 11's guarantees against takings of property. Rather, Article I, § 1, merely recites principles, but provides no "rules by means of which those principles may be given the force of law." *Robb*, 228 Va. at 681, 324 S.E.2d at 676 (citing *Newport News v. Woodward*, 104 Va. 58, 61-62 (1905)). Again, the Legislature could have included express self-execution language or language providing a rule and remedy, as they did for the other two cited sections, but they did not do so for Article I, § 1.

Although all the Plaintiff's claimed constitutional causes of action involve the Virginia Constitution, not the federal one, this Court has examined, for sure guidance, when and under what circumstances federal courts have allowed causes of action under the federal document. About three decades ago, the U.S. Supreme Court created an independent cause of action for monetary damages against federal officials, acting under color of federal law, who violate an individual's federal constitutional rights. *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). The Court later specified in *Carlson v. Green*, 446 U.S. 14, 18-19 (1980), that a *Bivens* action may not be maintained in two situations: first, where Congress has provided an alternative remedy and has indicated its intent, either explicitly or implicitly, that the remedy should be a substitute for recovery directly under the Constitution, and, second, where there are "special factors counseling hesitation in the absence of affirmative action by Congress." The Court elaborated on the "special factors" exception in *Bush v. Lucas*, 462 U.S. 367 (1983), a case in which it denied a *Bivens* action to a federal NASA employee because the comprehensive civil service remedies available to federal employees constituted a "special factor counseling hesitation," even though the existing remedies did not give the plaintiff "complete relief." The Court summarized what the "special factors" exception means in *Schweiker v. Chilicky*, 487 U.S. 412 (1988):

> [T]he concept of "special factors counseling hesitation in the absence of affirmative action by Congress" has proved to include an appropriate judicial deference to indications that congressional action has not been inadvertent. When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional *Bivens* remedies.

*Id.* at 423. The U. S. Supreme Court went on to reiterate in *Schweiker v. Chilicky*, as it had earlier in *Bush*, that the fact that Congress had not provided "complete relief" did not necessitate, in *Chilicky*, creating a *Bivens* remedy against Social Security officials for violating due process rights. The Social Security system's elaborate administrative remedies was a "special factor counseling hesitation," and thus the Supreme Court declined to create a *Bivens* remedy. *Chilicky*, 487 U.S. at 428-29.

The federal court for the Eastern District of Virginia examined the "special factors" exception in *Williams v. Dept. of Veteran Affairs*, 879 F. Supp. 578 (E.D. Va. 1995), and, after summarizing the U.S. Supreme Court's decisions in *Bush* and *Chilicky*, noted:

> Those decisions make it plain that even where Congress has not explicitly intended that a given statutory or regulatory scheme is intended to substitute, rather than merely supplement, recovery directly under the Constitution, a *Bivens* action may yet be inappropriate where that legislative scheme provides meaningful remedies for the proscribed conduct. In such circumstances, it may be reasonable to assume that Congress' failure to provide the full range of possible remedies reflects a deliberate choice in how best to balance the competing policy interests of an injured individual's need for redress and the effective operation of government.

*Id.* at 586. The federal court in *Williams* concluded that the plaintiff could not maintain a *Bivens* action against Veterans Affairs personnel because the Privacy Act "directly address[ed] and regulate[d] the conduct of which [the plaintiff] complaine[d]." *Id.* That same federal court six years earlier had noted in *Harbin v. City of Alexandria*, 712 F. Supp. 67 (E.D. Va. 1989), in footnote 7:

> Still remaining to be considered by the state court is whether state law sovereign immunity applies to violations of Virginia's statutes or constitution. Moreover, there is a question of first impression still to be resolved: Does a cause of action exist based solely on the Virginia Constitution? Such a cause of action would be analogous to a *Bivens*-type cause of action under the United States Constitution.

That question raised in *Harbin* has never been answered by Virginia's appellate courts.[3] Based on (1) this Court's reading of the Virginia Constitution's text and the context of the relevant provisions; (2) its reading of Virginia cases interpreting when Virginia's constitutional provisions are self-executing; (3) this Court's interpretation of federal cases in analogous situations and their reasoning; as well as (4) the lack of applicable self-executing language in the cited Virginia constitutional provisions, this Court finds that the Virginia Supreme Court would decline to find that such a cause of action existed under the Virginia Constitution.

Plaintiff suggests this court apply *Bivens* by analogy, as he suggests courts in other states have done, and cites several cases from other states for support. Some of these cases, however, are not persuasive and others do not stand for the proposition for which they are cited. For example, in *Smith v. Dep't of Public Health*, 410 N.W.2d 749 (Mich. 1987), contrary to the assertion in Plaintiff's memorandum, the Supreme Court of Michigan did *not* recognize a cause of action under the Michigan Constitution's due process and equal protection clauses, but rather declined to extend the *Bivens* rationale by analogy to actions against state agencies. Similarly, in *Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989), a possible *Bivens* damage remedy for rights protected by the state constitution was not even mentioned, despite Plaintiff's suggestion to the contrary. The issue in *Will* was whether states are considered "persons" under 42 U.S.C. § 1983. The Florida Court of Appeals in *Schreiner v. McKenzie Tank Lines & Risk Management Servs. Inc.*, 408 So. 2d 711 (Fla. App. 1982), did find a state constitutional anti-discrimination provision to be self-executing, judged by Florida standards, different from Virginia's, that are used in Florida to gauge which Florida constitutional provisions are self-executing. *But see, e.g., Garcia v. Reyes*, 697 So. 2d 549 (1997) (Florida appellate court held that "there is no cause of action for money damages against the state, its agencies or employees acting in their official capacities for police misconduct arising under [the state constitution's] due process clause"). In *Widgeon v. Eastern Shore Hosp. Center*, 479 A.2d 921 (Md. 1984), the Court of Appeals of Maryland did hold that a cause of action

---

[3] Plaintiff asserts that the Supreme Court's decision in *Bowman v. State Bank of Keysville*, 229 Va. 534, 331 S.E.2d 797 (1985), and its progeny suggests a willingness on the part of the Supreme Court to recognize causes of action to remedy violations of stated public policies of the Commonwealth. The Supreme Court in *Bowman*, however, made it clear that it was establishing a *"narrow* exception to the employment at-will rule." *Id.* (emphasis added). Also, the line of cases following *Bowman* were also employment discrimination cases, not cases in which the plaintiffs were attempting to establish new "constitutional torts."

could be maintained when an individual is deprived of liberty or property interests in violation of the Maryland Declaration of Rights, but it specifically stated that it was not suggesting that every violation of state constitutional rights gives rise to a common law action for damages. In *Phillips v. Youth Devel. Program, Inc.*, 459 N.E.2d 453 (Mass. 1983), the Supreme Judicial Court of Massachusetts, in a state action case, only suggested in *dicta* that a person whose constitutional rights have been interfered with may be entitled to judicial relief even in the absence of a statute providing a procedural vehicle for such relief. Similarly, the New Jersey trial court cited by Plaintiff, in an employment discrimination claim, involving a property right only, stated in *dicta* that it had the power to enforce the state constitution anti-discrimination provision, whether or not implementing legislation had been adopted, citing *Bivens* and earlier state cases. However, the New Jersey court, in fact, affirmed only damages awarded under the New Jersey Tort Claims Act, not pursuant to a state constitutional provision. *Lloyd v. Stone Harbor*, 432 A.2d 572 (N.J. Super. 1981). In contrast, Pennsylvania has ruled directly on the issue. In *Hunter v. Port Authority*, 419 A.2d 631 (Pa. Super. 1980), a Pennsylvania trial court ruled that the plaintiff stated a cause of action under the state constitution, because the Pennsylvania Supreme Court had previously held its Constitution guaranteed an individual's right to engage in any of the common occupations of life. California also has recognized a cause of action under the state constitution's equal protection clause, as well as under anti-discrimination statutes. *Gay Law Students Assn. v. Pacific Tel. & Tel. Co.*, 595 P.2d 592 (Cal. 1979). The Illinois Appellate Court in *Newell v. City of Elgin*, 340 N.E.2d 344 (Ill. App. 1976), also recognized a *Bivens*-type cause of action for damages against police officers for violation of that state's equivalent to the U.S. Constitution's Fourth Amendment. *But see Bonner v. City of Santa Ana*, 45 Cal. App. 4th 1465 (1996) (no cause of action was recognized under state equal protection clause; no right of action found under the state due process clause when there is an alternative legislative remedy). Alaska, Colorado, Connecticut, Hawaii, New Hampshire, New York, Ohio, Oregon, Rhode Island, and Tennessee appellate courts, on the other hand, in cases cited by the Defendant, have all declined to recognize causes of action under their state constitutions when a plaintiff had an alternative remedy available.

Therefore, this Court sustains the Defendant's demurrer as to Count II.

### (C)(2) *Count III: Unreasonable Seizure*

The third count in the motion for judgment claims that the defendants are jointly and severally liable for violating the decedent's rights against

unreasonable seizures under Virginia constitutional and statutory law. Although Plaintiff's Motion for Judgment does not cite any authority for recovery under Count III, his memorandum in opposition to demurrer cites two sources of authority for the unreasonable seizure claim: Article I, §§ 10 and 11, of the Virginia Constitution, and Va. Code § 19.2-59.

As an initial matter, this Court's analysis with regard to a possible claim for unreasonable seizure under the Constitution of Virginia is identical to its analysis of Count II for deprivation of life and liberty; Virginia appellate courts have not recognized private rights of action under provisions of the Constitution of Virginia except when they are self-executing, which the cited provisions are not. Thus this Court declines to create a private right of action under the Virginia Constitution for a claim of unreasonable seizure.

Plaintiff asserted in his memorandum and at the February 5, 2001, hearing, that the Code of Virginia, § 19.2-59, provides a private right of action by a citizen against a police officer for an unreasonable seizure. This Court, in its letter of February 21, 2001, advised counsel that it believed that an action for damages under § 19.2-59 was only available for unreasonable searches, as that code section describes searches, but not seizures. This Court asked counsel to provide additional law and argument as to whether the private right of action under § 19.2-59 pertains only to searches or if it additionally includes seizures. The Court also cited a by-then repealed statute, § 19.2-83, as analogous to § 19.2-59 in many way, but dealing with seizures and asked each to analyze the significance, if any, of the existence at the time of the two sections. After considering the authorities and arguments presented by both sides on that point, the Court remains persuaded that § 19.2-59, which creates a cause of action for unreasonable searches, creates no such cause for unreasonable seizures.

To begin with, the headings of the Chapters in which § 19.2-59 and the now-repealed § 19.2-83 appeared lend credence to the Court's interpretation. Chapter 5 of the Code of Virginia, of which § 19.2-59 is a part, is entitled "Search Warrants." Chapter 7 of the Code of Virginia, of which the now repealed § 19.2-83 was a part, is entitled "Arrest." Most importantly, the express language of § 19.2-59 is directed at searches, but says nothing about seizures:

> No officer of the law or any other person shall *search* any place, thing or person, except by virtue of and under a warrant issued by a proper officer. Any officer or other person *searching* any place, thing or person otherwise than by virtue of and under a *search* warrant, shall be guilty of malfeasance in office. Any officer or person violating the

provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages. Any officer found guilty of a second offense under this section shall, upon conviction thereof, immediately forfeit his office, and such finding shall be deemed to create a vacancy in such office to be filled according to law.

Va. Code § 19.2-59 (emphasis added).

It is well settled in Virginia that "when a statute is clear and unambiguous, its plain meaning must be accepted without resort to extrinsic evidence or rules of construction." *Gonzalez v. Fairfax Hospital System, Inc.*, 239 Va. 307, 310, 389 S.E.2d 458, 459 (1990) (citing *Compton v. Commonwealth*, 239 Va. 312, 389 S.E.2d 460 (1990)). The relevant language in the statute is clear and unambiguous; it only mentions searches, not seizures. Additionally, the origin of the statute, in its legislative history, shows that § 19.2-59 was enacted in 1920 to remedy perceived excesses of prohibition, destroying illegal stills without probable cause or a warrant. That origin suggests no legislative intent to remedy warrantless arrests or unreasonable seizures of the still owners, even were the statutory language found to be ambiguous to such inclusion. A number of the cases annotated under the provision use broad language that the protections under this statute are co-extensive with the Fourth Amendment, which deals with both searches and seizures of property as well as a person. However, the facts in all the cases cited only relate to property, searches and seizures of *property*; none deals with the arrest or seizure of a *person*. Had the General Assembly wanted to include in the statute a private right of action for unreasonable seizures of a person, it could have done so by adding "seizures" to the provision in § 19.2-59 or it could have added another statute to Chapter 7, dealing with arrests and seizures of a person.

Section 19.2-83 was somewhat analogous to § 19.2-59; it was repealed in 1994. While § 19.2-83 did not include the remedy of damages, it otherwise paralleled § 19.2-59, the former protecting against unreasonable seizures and the latter setting out standards for reasonable searches. Had the Legislature believed § 19.2-59 covered seizures, there would have been no need to enact § 19.2-83 in 1972. (The statute was originally enacted as § 19.2-100.2 and was renumbered as § 19.2-83 in 1975.) Section 19.2-83 read as follows:

*Authority of police officers to stop, question and search suspicious persons.* Any police officer may detain a person in a public place whom he reasonably suspects is committing, has committed or is

about to commit a felony or possesses a concealed weapon in violation of § 18.2-308, and may require of such a person his name and address. Provided further, that such police officer may, if he reasonably believes that such person intends to do him bodily harm, search his person for a dangerous weapon, and if such person is found illegally to possess a dangerous weapon, the police officer shall take possession of the same and dispose of it as provided by law.

This Court will not add to the statute what the General Assembly left out.

The Plaintiff is not without recourse to pursue an excessive force claim. It might be appropriate to include such a claim under the wrongful death count for torts against the decedent, such as the torts of assault and battery, false arrest, or false imprisonment. Should Plaintiff wish to pursue the decedent's common-law causes on these grounds, under its wrongful death count, this Court would note that, under the U.S. Supreme Court's holding in *Graham v. Connor*, 490 U.S. 386 (1989), all such *federal* constitutional claims of excessive force are properly analyzed under the Fourth Amendment's "objective reasonableness" standard, rather than under a substantive due process standard. *Graham* was brought under 42 U.S.C. § 1983, a statute for which there is no statutory equivalent in Virginia. However, in Virginia, a tort claim of assault under Virginia law, the Virginia Supreme Court might look to *Graham* for guidance. In *Graham*, the Supreme Court recounted the balancing test first outlined in *Tennessee v. Garner*, which includes balancing the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. Further, "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight, and allows for the fact that police officers are often forced to make split-second judgments in circumstances that are tense, uncertain, and rapidly evolving about the amount of force that is necessary in a particular situation. Such reasonableness must be objective; "an officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Id.* at 397 (citing *United States v. Robinson*, 414 U.S. 218 (1973)). If those common-law causes were added to Plaintiff's wrongful death claim, the parties would need to brief whether the standard articulated in *Graham* would be applied by the Virginia Supreme Court to a wrongful death claim based on assault against the decedent by the police.

### (C)(3) *Count IV: Equal Treatment and Racial Discrimination*

The fourth count in the motion for judgment claims that the defendants are jointly and severally liable for violating the decedent's rights to equal treatment and freedom from race discrimination under the Virginia Constitution. A race discrimination claim based on the Constitution of Virginia or statutes would appear to founder on the fact that the Legislature enacted a scheme for such claims under § 2.1-715 of the Virginia Code, the Virginia Human Rights Act. That act states that it is the public policy of the Commonwealth to "safeguard all individuals within the Commonwealth from unlawful discrimination because of race. . . ." Section 2.1-725 of the Act, however, specifies that "Nothing in this chapter creates, nor shall it be construed to create, an independent or private cause of action to enforce its provisions, except as specifically provided in subsections B and C of this section." Subsection D of the same section states that, "Causes of action based upon the public policies reflected in this chapter shall be exclusively limited to those actions, procedures and remedies, if any, afforded by applicable federal or state civil rights statutes or local ordinances." No such state statute exists that this Court can find, and the Plaintiff makes no federal claims in his lawsuit. The Virginia Supreme Court, in *Conner v. National Pest Control Ass'n, Inc.*, 257 Va. 286, 513 S.E.2d 398 (1999), considered a case in which a plaintiff attempted to maintain a common-law action based on an alleged violation of a policy enunciated in the VHRA by citing different Code sections or other sources of public policy, including the Virginia Constitution. The Court held that the General Assembly "made statutory causes of action the exclusive avenues for pursuing a remedy for an alleged violation of any public policy 'reflected in' the VHRA," and that the General Assembly therefore "eliminated a common law cause of action . . . based on any public policy which is reflected in the VHRA, regardless of whether the policy is articulated elsewhere." *Id.* at 289-90, 513 S.E.2d at 400. Thus, VHRA does not provide a remedy for race discrimination. A constitutional claim for race discrimination also fails for the same reasons cited in this Court's opinion, as to the other Virginia constitutional claims, *supra*, subsections (3)(a) and (3)(b).

Even if such a statutory or constitutional remedy exists under Virginia law, which is doubtful, Plaintiff's Motion for Judgment only contains conclusory allegations, without any facts supporting a claim for race discrimination. The Defendant's demurrer is sustained and the Plaintiff is granted leave to amend his Motion for Judgment to include both specific facts sufficient to support such a claim in good faith, as well as an accompanying

memorandum setting forth a legal basis, other than the Virginia Constitution or § 2.1-715 *et seq.*, for claims of racial discrimination.

(D) *Supervisory Liability*

The Plaintiff, in his Motion for Judgment, appears to assert claims against the police chief and operations officer for negligent training and supervision, although no factual assertions in the Motion for Judgment regarding those or dealing with negligent hiring and retention are set forth to support any such claims. Plaintiff did set forth certain facts relevant to those causes of action in his memorandum in opposition to demurrer, but that is not the same as alleging them in his Motion for Judgment.

Further, there are no statutes or cases in Virginia in which courts have recognized the tort of negligent training, and the Supreme Court has specifically refused to recognize the tort of negligent supervision. As stated in *Chesapeake and Potomac Tel. Co. of Va. v. Dowdy*, 235 Va. 55, 365 S.E.2d 751 (1988): "In Virginia there is no duty of reasonable care imposed upon an employer in the supervision of its employees under these circumstances and we will not create one here." In *Dowdy*, the Supreme Court refused to find a cause of action where a supervisor was alleged to be directly harassing a fellow employee, against the supervisor's supervisors or managers for negligent supervision. The Circuit Court for Fairfax County has read *Dowdy* as a refusal by the Virginia Supreme Court to create the tort of negligent supervision. *Courtney v. Ross Stores*, 45 Va. Cir. 429 (1988), involved allegations that a company was not properly supervising or overseeing a supervisor, who in turn was not properly supervising a retail clerk. The Fairfax Circuit Court noted:

> [I]f, under the negligent retention tort, an employer has a duty to act upon notice of an employee's incompetency or unfitness, then theoretically that employer would have to respond to complaints that come to its attention because of day-to-day failures of an employee. Thus, the distinction between retention and supervision becomes blurred.

*Id.*

However, the Virginia Supreme Court has recognized the independent tort of negligent hiring. In *Southeast Apartments Management, Inc. v. Jackman*, 257 Va. 256, 513 S.E.2d 395 (1999), the Court wrote, "[T]he cause of action is based on the principle that one who conducts an activity through employees

is subject to liability for harm resulting from the employer's own conduct if the employer is negligent in the hiring of an improper person in work involving an unreasonable risk of harm to others." The Court further added:

> Liability is predicated on the negligence of an employer in placing a person of known propensities, or propensities which should have been discovered by reasonable investigation, in an employment position in which, because of the circumstances of the employment, it should have been foreseeable that the hired individual posed a threat of injury to others.

*Id.* To pursue a negligent hiring claim, Plaintiff would have to prove that the Defendant supervisors knew, prior to hiring, that the Defendant officers had dangerous propensities. The Plaintiff alleges no such facts in his Motion for Judgment, or even in his brief.

The Supreme Court has also recognized the independent tort of negligent retention. *Big Stone Gap Iron Co. v. Ketran*, 102 Va. 23, 45 S.E. 740 (1903). Such a claim is based on the principle that an employer is liable for negligently retaining or failing to fire or remove an employee after learning of the employee's incompetence, negligence or unfitness for a position. The Court set out specific steps required in order to hold a company liable for the hiring or retention of an alleged incompetent employee: "[T]here must be evidence of a want of reasonable care in his selection, or actual notice of his unfitness, or proof of such acts of negligence as would have affected the master with notice had he exercised due oversight and supervision."

In this case, Plaintiff alleges that the Defendant supervisors knew or should have known about the dangerous propensities of the officers on the scene, but does not allege any facts that demonstrate such knowledge, either before they were hired or after they were working but were nevertheless retained.

This Court therefore grants the Defendants' demurrer with respect to all causes of action against the Defendant supervisors, but it grants Plaintiff leave to amend his Motion for Judgment to allow him to allege facts, if he can, relative to negligent hiring and retention. However, given the lack of any court recognition of a cause of action for negligent training or supervision, the Plaintiff may not reassert those claims by amending his Motion for Judgment.

(E) *Sovereign Immunity*

The individual Defendants assert that the Plaintiff's claims against them are barred by the doctrine of sovereign immunity. In *James v. Jane*, 221 Va.

43 (1980), the Supreme Court clearly distinguished the application of the doctrine of sovereign immunity to "the state, whose immunity is absolute unless waived, and [to] the employees and officials of the state, whose immunity is qualified, depending upon the function they perform and the manner of performance." The four-factor test for sovereign immunity, as set forth in *James*, was later reiterated in *Messina v. Burden*, 228 Va. 301 (1984): (1) the nature of the function the employee performs; (2) the extent of the governmental entity's interest and involvement in that function; (3) the degree of control and direction exercised by the governmental entity over the employee; and (4) whether the alleged wrongful act by the employee involved the exercise of judgment and discretion. The Court in *James, supra*, reiterated its previous holdings that state employees may be held liable for intentional torts, citing *Elder v. Holland*, 208 Va. 15, 155 S.E.2d 369 (1967), or for acting wantonly or in a culpable or grossly negligent manner, for which actions they lose their immunity. *James*, 221 Va. at 52, 282 S.E.2d at 868.

The Supreme Court evaluated those four sovereign immunity factors in the context of a police high-speed vehicular pursuit in *Colby v. Boyden*, 241 Va. 125, 400 S.E.2d 184 (1991), holding that the officer was immune because he was not grossly negligent, which it defined as the "utter disregard of prudence amounting to complete neglect of the safety of another." The federal court for the Eastern District of Virginia, applying Virginia law, evaluated the application of sovereign immunity to a case with facts similar to the instant case. *Shaffer v. City of Hampton*, 780 F. Supp. 342 (E.D. Va. 1991), involved an action brought under § 8.01-50, the Virginia Wrongful Death Statute, against the City of Hampton, the police chief, and the police officers, one or more of the latter having fatally shot the plaintiff's brother while he was standing in a convenience store with a gun in his hand. The federal court found that the plaintiff did not assert a cause of action under the wrongful death statute, but it also held that, even if the plaintiff did assert such a cause, the officers and police chief were entitled to sovereign immunity. The court's evaluation of the facts under the *James* factors was that:

> [T]he police officers . . . were performing the governmental function of law enforcement and public protection and . . . the state of Virginia has great interest in this function. Although the issue was not addressed by the Defendants, it seems clear that the City exercised some administrative control and supervision over the officers. This Court further finds that the officers' acts involved judgment and discretion.

*Id.* The court further stated that such immunity did not protect the defendants if they acted with gross negligence but that the plaintiff had earlier disavowed any such claim.

In the instant case, the plaintiff in his Motion for Judgment does not assert a cause of action for gross negligence or for wanton and willful conduct against the defendants, although he does make those assertions in his memorandum in opposition to Defendants' demurrer. Because the plaintiff has been granted leave to amend his Motion for Judgment, a ruling on sovereign immunity would be premature at this stage of the proceedings. Therefore, this Court declines to rule on the Defendants' pleas of sovereign immunity at this time but grants Defendants leave to reassert the defense against any claims reasserted by Plaintiff, after amendments to his Motion for Judgment that the Defendants acted other than intentionally, wantonly, or with gross negligence.

## Conclusion

This Court sustains the Defendants' demurrer with respect to all causes of action and grants the Plaintiff leave to amend his Motion for Judgment and reassert some of his causes but not all of his claims, as set out in this opinion. Plaintiff has thirty days from the date of this letter opinion in which to file his amended Motion for Judgment.